**UNITED STATES of America**

v.

**Allan Aaron SHAPIRO, Defendant.**

**No. 67 Cr. 621.**

United States District Court,
S. D. New York.

March 24, 1975.

Paul J. Curran, U. S. Atty. by George E. Wilson, Asst. U. S. Atty., New York City, for plaintiff.

Kunstler, Kunstler, Hyman & Goldberg by Joan Goldberg, New York City, for defendant.

ROBERT L. CARTER, District Judge.

## OPINION

On July 14, 1967, defendant Allan Aaron Shapiro was indicted in the Southern District of New York for refusal to report for induction, in violation of Section 462(a) of Title 50 Appendix, United States Code. On November 29, 1974, Shapiro filed a motion to dismiss the indictment pursuant to Rule 12(b), F.R.Crim.P. In support of the motion, he argues that the alleged failure of his local draft board to state any reason for denying his application for conscientious objector status constituted a denial of due process. He claims that decisions of the United States Supreme Court and of the Court of Appeals for this circuit require reversal of a conviction based upon a refusal to obey an induction order issued after such action by a local board.[1] The government has declined to address the merits of Shapiro's motion on the ground that defendant has fled the country, and that the court should not proceed further on his motion until he surrenders. This opinion considers only the contention raised by the government, which I shall refer to as the "jurisdictional issue."[2]

In reference to this issue, the government's affidavit sets forth the following facts. Shapiro was arrested by the FBI on June 27, 1967, and on July 14, 1967, he was indicted for refusal to submit to induction. After he was released on bail, Shapiro fled to Canada and has remained beyond the jurisdiction of this court to the present day. On January 11, 1968, when defendant failed to appear in court, a bench warrant was issued for his arrest, and that warrant remains outstanding.

In support of its position that this court should not consider the merits of Shapiro's motion until after Shapiro has surrendered, the government relies on a line of authorities from Justice Frankfurter's dissenting opinion in Eisler v. United States, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949), dismissed as moot, 338 U.S. 883, 70 S.Ct. 181, 94 L. Ed. 542 (1949), to the Supreme Court's

---

1. *See, e. g.,* Lenhard v. United States, 405 U.S. 1013, 92 S.Ct. 1296, 31 L.Ed.2d 477 (1972); United States v. Stewart, 478 F.2d 106 (2d Cir. 1973).

2. On January 30, 1975, a conference was held in chambers to consider whether the motion might be disposed of in such a way as not to prejudice defendant's opportunity to participate in the President's amnesty program should the motion be decided against him. The deadline for participation in the program was originally January 31, 1975, but was later extended by one month.

At the conference, I initially advised the parties that I intended to follow Judge Weinstein's decision in United States v. Lockwood, 382 F.Supp. 1111 (E.D.N.Y. 1974), and proceed to determine the motion on the merits even though Shapiro remained a fugitive. The government then informed me that the United States Attorney for the Eastern District had sought appellate review of Judge Weinstein's decision by a petition for a writ of mandamus. United States v. Weinstein, 511 F.2d 622 (2d Cir. 1975). I agreed with the government that determination of the threshold "jurisdictional issue" should await the Court of Appeals' decision in United States v. Weinstein.

At the conference, the Assistant United States Attorney represented that the government would allow Shapiro one week to join the amnesty program after the motion was "finally resolved" by me. Specifically, if Judge Weinstein's position in Lockwood was clearly rejected by the Court of Appeals, then Shapiro would have to surrender before there could be a determination on the merits. Shapiro's attorney represented that in this event, her client would surrender as quickly as practicable. If the subsequent decision on the merits went against him, he would have one week from the date of that decision to join the amnesty program. (If Shapiro is completely successful on the merits, he will not, of course, join the amnesty program at any time.) If Judge Weinstein's position was upheld by the Court of Appeals, the government would, nonetheless, attempt to distinguish the situation in Lockwood; if the government was successful in distinguishing Lockwood on the "jurisdictional issue," Shapiro would have to return to the United States immediately, and events would proceed as above. If the government lost on the "jurisdictional issue", however, the court would decide Shapiro's motion on the merits without requiring him to surrender. If the decision on the merits was adverse to Shapiro, he would be given one week from the date of that decision to join the amnesty program.

decision in Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970). In *Eisler, supra,* the defendant had fled after he had been convicted and the Supreme Court had granted certiorari. The issue was whether the writ of certiorari should be dismissed or whether review should merely be postponed by removing the case from the docket. Disagreeing with the majority, Justice Frankfurter argued that the writ should be dismissed on the ground that the defendant's flight had deprived the action of its character as a case or controversy, and that the Supreme Court was therefore without jurisdiction:

> " \* \* \* [T]he abstract questions brought before the Court by Eisler are no longer attached to any litigant. No matter remains before us as to which we could issue process." 338 U.S. at 191, 69 S.Ct. at 1454.

In Molinaro v. New Jersey, *supra,* the defendant had similarly fled during an appeal to the Supreme Court of his conviction in the New Jersey state courts. In *Molinaro,* the Court dismissed the appeal. However, it made clear that defendant's flight did not "strip the case of its character as an adjudicable case or controversy." 396 U.S. at 366, 90 S. Ct. at 498. Moreover, the Court's language clearly indicates that in dismissing the appeal, the Court was exercising its discretion:

> "No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. \* \* \* [T]he Court has the authority to dismiss the appeal on this ground." 396 U.S. at 366, 90 S. Ct. at 498.

*See* Smith v. United States, 94 U.S. 97, 24 L.Ed. 32 (1876); Johnson v. Laird, 432 F.2d 77, 79 (9th Cir. 1970); United States v. Swigart, 490 F.2d 914, 915 (10th Cir. 1973).

The Court of Appeals for the Second Circuit followed *Molinaro* most recently in United States v. Sperling, 506 F.2d 1323, 1345 n. 33 (2d Cir. 1974), where, shortly before its decision was rendered, the Court learned that one of the defendants had fled. The Court ruled that the appeal would be dismissed with prejudice unless the defendant surrendered within a specified period of time. *Accord,* United States v. Tremont, 438 F.2d 1202 (1st Cir. 1971); United States v. Shelton, 482 F.2d 848 (5th Cir. 1973), cert. denied, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973), 415 U.S. 976, 94 S.Ct. 1562, 39 L.Ed.2d 872, reh. denied, 416 U.S. 975, 94 S.Ct. 2004, 40 L.Ed.2d 565 (1974); Fratus v. United States, 496 F.2d 1190 (5th Cir. 1974); Brinlee v. United States, 483 F.2d 925 (8th Cir. 1973); Johnson v. Laird, *supra; cf.* United States v. Press, 401 F.2d 499 (3d Cir. 1968).

■■■ I have decided that resolution of the jurisdictional issue is not controlled by the foregoing cases, all of which stand for the proposition that an *appellate court* may, *in its discretion,* dismiss an appeal if a criminal defendant becomes a fugitive. The above-cited cases may be distinguished on the ground that in most of these cases, the defendant had been convicted, *but see* Dawkins v. Mitchell, 141 U.S.App.D.C. 213, 437 F.2d 646, 648 (1970), whereas here, defendant Shapiro has not yet been tried, and is therefore presumed to be innocent. Furthermore, as noted, the *decision whether to dismiss an appeal,* or here, whether to refuse to consider Shapiro's motion, rests in the sound *discretion* of the court.

In United States v. Golden, 239 F.2d 877 (2d Cir. 1956), where the defendant who was a fugitive in Thailand, had moved to dismiss the indictment on jurisdictional grounds, the district court had ruled that " '[t]he defendant may not without surrendering himself, in absentia, contest the validity of the indictment or its sufficiency.' " 239 F.2d at 878. The Court of Appeals' majority opinion did not reach the merits, holding the order not appealable. However,

Judge Frank's concurring opinion stated that there was no general rule requiring that a defendant surrender before the district court may rule on a motion to dismiss the indictment:

"I do not believe there is any authority for the District Judge's ruling that invariably, a defendant must incur the expense of a many-thousand-mile journey to submit himself to the jurisdiction of the court, in order to have an indictment quashed." 239 F. 2d at 880.

In United States v. Lockwood, 382 F. Supp. 1111 (E.D.N.Y.1974), Judge Weinstein took a similar position, ruling that the district court would consider the merits of motions to dismiss indictments in the absence of 26 fugitive defendants. In that case, Judge Weinstein, on his own initiative, entered an order declaring that the defendants were allegedly fugitives without representation, and, without notice either to the government or the defendants, he appointed Professor Louis Lusky of Columbia Law School to represent the defendants. Thereafter, Judge Weinstein ordered the government to turn over the defendants' selective service files to Professor Lusky, and ruled that the court had power to decide any motions to dismiss the indictments that Professor Lusky might make before the defendants surrendered. In support of his decision on the latter issue, Judge Weinstein stated that "[t]he rules against trials in absentia were designed to protect the defendant's, not the government's, rights. See, e.g., the right to confrontation in the Sixth Amendment." 382 F.Supp. at 1115. Therefore, Judge Weinstein apparently concluded, the government was not the appropriate party to raise the issue of whether the absence of the defendants deprived the court of jurisdiction. Ibid. In any event, he implicitly found that the defendants would not be prejudiced by being absent during the consideration of pretrial motions to dismiss the indictments. In support of his ruling, Judge Weinstein also noted that by negative implication, Rule 43, F.R. Crim.P., suggests that the defendant's presence is unnecessary at pretrial motions, and that the defendant need not be present at a pretrial suppression hearings[3] or certain habeas corpus hearings.[4] Finally, he relied on the opinion of Justice Douglas, sitting as a Circuit Justice in chambers, who ruled that a district judge had discretion to consider the validity of an indictment either before or after the defendant's surrender and arraignment. Hughes v. Thompson, 415 U.S. 1301, 94 S.Ct. 829, 39 L.Ed.2d 93 (1974).

I agree that one of the principal purposes of requiring the defendant's presence is to protect the defendant. If that is so, there is greater reason to proceed to the merits in the instant case than in Lockwood, since here, unlike in Lockwood, the defendant, through his attorney, has authorized the motion to dismiss, and has consented to having it decided in his absence.

■ The Court of Appeals' decision in United States v. Weinstein, 511 F.2d 622 (2d Cir. 1975), supports this view. The Court did grant the writ of mandamus. However, the ground of the decision was not that the district court lacked power to proceed in the absence of the defendants. Rather, the basis of the decision was that the defendants had not authorized Professor Lusky to represent them, and that in the absence of authority from a defendant, the court had no power to order discovery of the defendant's selective service file or to entertain motions on the defendant's behalf. Id. at 627. The Court of Appeals expressly authorized the action which I propose to take in the present case, that is, to decide the instant motion to dis-

---

3. United States v. Bell, 464 F.2d 667 (2d Cir.), cert. denied, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972).

4. See United States v. Hayman, 342 U.S. 205, 222, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

miss on the merits, *with the consent of the defendant*:

> "We should make it clear that we do not intend to preclude Judge Weinstein from entertaining motions on behalf of fugitive defendants who have agreed that Professor Lusky or any other attorney represent them. [citation omitted]" *Id.* at 629.[5]

I do not believe that the protection of the defendant is the only reason for requiring his presence. The basis of the decisions following *Molinaro* seems to be the desire of the courts to insure some form of "mutuality": the courts are unwilling to allow a defendant to gain the benefit of a favorable result when he is unwilling to risk the burden of an adverse decision.[6]

However, in the present case, there is perhaps less cause for concern in this regard than in other cases. Shapiro's attorney represented to me that if the jurisdictional issue were decided against her client, he would surrender promptly to permit a determination on the merits. If the decision on the merits is unfavorable to Shapiro, there remains a considerable incentive to return. The defendant will have to surrender within one week of a decision on the merits in order to be eligible for the amnesty program. These considerations support my belief that I can properly exercise my discretion to decide the merits of the instant motion without requiring Shapiro to surrender.

I shall postpone consideration of the merits since the government has not briefed the issues raised by defendant.

The government is allowed 10 days from the date of this decision to file its papers. Defendant may have an additional five days to reply.

So ordered.

---

5. I do not regard the Court's quotation of Justice Frankfurter's statement in Eisler to the effect that the flight of the defendant deprived the court of jurisdiction. *Id.* at 628 n. 7, as indicating that the Second Circuit adopts this view. First, this would be inconsistent with the statement quoted in the text authorizing the district court to entertain motions by fugitive defendants. Second, as noted, the Supreme Court in Molinaro seemed to reject Justice Frankfurter's view, stating expressly that defendant's flight did not deprive the case of its character as a case or controversy. 396 U.S. at 366, 90 S.Ct. 498.

6. *See* Johnson v. Laird, *supra*: "If we should rule in appellant's favor, he would probably return to the country since he would then be free of the military authorities. If, however, we decide against him, we have no indication that he would surrender himself to the military authorities." 432 F.2d at 79.