**UNITED STATES of America**

v.

**P. Takis VELIOTIS, James H. Gilliland, George G. Davis and Gerald E. Lee, Defendants.**

No. 83 Crim. 551 (WCC).

United States District Court, S.D. New York.

May 25, 1984.

William M. Tendy, Acting U.S. Atty., S.D.N.Y., New York City, for U.S.; David W. Denton, Asst. U.S. Atty., New York City, of counsel.

Anderson, Russell, Kill & Olick, P.C., New York City, for defendant, P. Takis Veliotis; John H. Gross, Randy Paar, New York City, Deborah A. Swindells, Washington, D.C., of counsel.

## OPINION AND ORDER

CONNER, District Judge:

P. Takis Veliotis ("Veliotis") and three co-defendants were charged in a seventeen-count indictment with various offenses arising out of an alleged kickback scheme, including conspiracy to violate 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. §§ 1961 *et seq.* Veliotis fled the jurisdiction before the indictment was filed, and currently remains a fugitive from justice. Appearing through his attorney, Veliotis seeks removal of an *ex parte* restraining order which prohibits him from selling or otherwise disposing of his stock in General Dynamics Corporation ("General Dynamics"). The restraining order was entered upon representations by the Government that the stock would be subject to forfeiture as a penalty under 18 U.S.C. § 1963(a)(2) if Veliotis is ultimately convicted of the underlying RICO violation. For the reasons set forth below, I reserve ruling on whether to continue the restraining order pending a hearing at which the Government will have to demonstrate that the stock in question bears sufficient relation to the alleged illegal transactions to make it a potential subject of forfeiture under § 1963 if Veliotis is convicted.

## BACKGROUND

General Dynamics is a publicly-held corporation. Two of its divisions, the Quincy Division ("Quincy") and the Electric Boat Division ("Electric Boat") engage in ship construction. According to the indictment filed in this case, defendant Veliotis was a high-ranking officer and member of the Board of Directors of General Dynamics during the period between January 1973 and June 1982. He was also the President and General Manager of Quincy and the General Manager of Electric Boat.

The indictment, which was filed on September 6, 1983, accuses Veliotis and defendant James Gilliland, another high-ranking employee of General Dynamics, of having secured kickbacks in exchange for awarding subcontracts for work on commercial vessels and submarines to Frigitemp Corporation ("Frigitemp") and IDT Corporation ("IDT"), entities allegedly controlled by defendants George Davis and Gerald Lee. Count Two of the indictment, the portion relevant here, charges that the four men conspired to violate 18 U.S.C. § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity that included mail fraud, wire

fraud, interstate transportation of stolen property and bankruptcy fraud. The enterprise itself is alleged to consist of "defendants Veliotis, Gilliland, Davis and Lee, together with Frigitemp, IDT, [various entities purportedly created for the purpose of laundering embezzled funds], and ... other persons and entities known and unknown[.]" Indictment at ¶ 38. The indictment does not name General Dynamics as a participant in the enterprise.

The indictment also contains a forfeiture provision which states that the defendants did utilize their interests in, security of claims against, and property and contractual rights of various kinds in the business listed below [including General Dynamics] to afford themselves a source of influence over the Enterprise, ..., thereby making all their respective interests in the following entities, together with the proceeds derived therefrom, subject to forfeiture, pursuant to Title 18, United States Code, section 1963(a)(2).

Two days after the indictment was filed, the Government made an *ex parte* application to Judge Stewart of this Court, pursuant to 18 U.S.C. § 1963(b), to restrain General Dynamics, its employees and agents from disposing of Veliotis's stock in the corporation without prior approval of the court. The Government submitted a supporting affidavit, reciting that the indictment provided for forfeiture of the defendant's interests in various named entities including General Dynamics, that Veliotis had acquired a substantial number of shares of the stock as a result of his employment during the period the conspiracy continued, and that he had recently been disposing of those shares. The Government asserted that it would be "entitled as a matter of law to mandatory forfeiture of certain assets in the event the charges prove well founded," and that it was therefore appropriate for the Government to be protected against nullification of the forfeiture remedy, Affidavit of David W. Denton, Assistant United States Attorney. Judge Stewart complied with the Government's request and entered the restraining order.

Veliotis now asks the Court to lift the restraining order on grounds that, as a matter of law, the stocks will not be forfeitable if he is convicted. He argues, alternatively, that the Due Process Clause mandates that he be provided with a prompt post-seizure hearing at which the Government would have to demonstrate that the stocks are forfeitable. The Government vigorously urges the Court to decline to entertain defendant's motion on grounds that Veliotis has refused to submit to the Court's jurisdiction, and argues that even if Veliotis were present, compliance with the strictures of due process would not require that he be given a hearing prior to trial.

## DISCUSSION

### I. *Veliotis's Fugitive Status*

The threshold issue to be addressed is whether the Court should decline to entertain Veliotis's motion on grounds that by fleeing, he has manifested his unwillingness to submit to the Court's jurisdiction for complete resolution of the charges against him and he therefore should not be permitted to enlist the Court's aid to achieve his own ends. Both parties concede that this matter resides within the sound discretion of the Court.

In urging the Court to decline hearing the merits, the Government relies on a line of cases deriving from *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970). In *Molinaro*, the defendant appealed his state conviction to the United States Supreme Court and, during the pendency of the appeal, he escaped from custody. The Court dismissed the appeal, stating:

No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.

*Id.* at 366, 90 S.Ct. at 498–499. Subsequent cases have firmly established the propriety of dismissing the appeals of fugitive defendants, *see, e.g., Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *United States v. Sotomayor,* 592 F.2d 1219 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979); *United States v. Stanzione,* 391 F.Supp. 1201 (S.D.N.Y.1975), and this approach advances legitimate policies. Nonetheless, courts have departed from the *Molinaro* approach under certain circumstances, displaying a greater receptiveness to the claims of fugitives. Some of these cases have particular relevance to the facts at hand.

Among the factors considered significant by various courts wrestling with the problem of fugitive defendants is the presence or absence of a claim of right guaranteed by the Constitution, as opposed to an entitlement that is statutorily created. In *United States v. Holmes,* 680 F.2d 1372 (11th Cir.1982), for example, where the defendant was held to have abandoned his appeal by fleeing, the court observed:

> The right of appeal is purely a creature of statute, 28 U.S.C. § 1291, and is not guaranteed by the Constitution. It may be waived by not filing a timely notice as required by the Federal Rules of Appellate Procedure or by abandonment through flight . . . .

*Id.* at 1373–74 (citation omitted). This emphasis also finds support in the language of *Estelle v. Dorrough, supra.* In rejecting an equal protection challenge to a state statute providing for automatic dismissal of pending appeals by escaped felons, the Supreme Court observed that "there is no federal constitutional right to state appellate review of state criminal convictions." *Id.* 420 U.S. at 536, 95 S.Ct. at 1175.

Veliotis has asserted that the Government has violated rights guaranteed him by the Due Process Clause and the Eighth Amendment. He has not suggested that the constitutional nature of his claim *requires* that the Court entertain the merits, and therefore I need not address that question. However, I am convinced that where a fugitive defendant seeks to vindicate a right vouchsafed by the United States Constitution, the Court should give weight to this factor in determining how to exercise its discretion.

Various courts departing from the *Molinaro* approach have suggested that the primary concern underlying *Molinaro* is one of mutuality. In other words, a court should decline to entertain the appeal of an escaped prisoner because it would allow him to benefit from a favorable result without risking the normal consequences of an adverse decision. *See, e.g., Williams v. Holbrook,* 691 F.2d 3, 14 (1st Cir.1982); *United States v. Shapiro,* 391 F.Supp. 689, 693 (S.D.N.Y.1975); *see also Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876) ("It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party . . . is where he can be made to respond to any judgment we render"); *Johnson v. Laird,* 432 F.2d 77, 79 (9th Cir.1970) ("*Smith* rests upon the inherent discretion of any court to refuse to hear the claim of a litigant who indicates that he will comply with that court's decree only if it is favorable"); *Lopez v. Malley,* 552 F.2d 682, 683 (10th Cir.1977). In *Shapiro, supra,* where counsel represented to the court that the defendant would surrender even if a threshold jurisdictional issue were decided adversely to him, the court was convinced there was mutuality and therefore agreed to hear the defendant's claim.

Veliotis has not offered to surrender should this Court agree to hear the merits of his present complaint, and for that reason this case is far less compelling than *Shapiro.* Still, unlike the situation where "a convicted defendant who has sought review escapes from the restraints upon him pursuant to the conviction," *Molinaro, supra,* Veliotis cannot "opt out" of an adverse ruling. His stocks are currently under restraint and he wishes to have that restraint lifted so he can dispose of them. Should the Court agree to inquire into the propriety of the restraint and then decline to provide the relief he seeks, Veliotis will be bound; thus, although the Court will not have the defendant before it for purposes

of resolving the entire matter, neither will the Court's efforts have been wasted.

The court in *Shapiro* also noted that a distinction should be drawn between claims asserted by convicted defendants and those asserted by defendants who have yet to be tried, and who therefore still enjoy a presumption of innocence. 391 F.Supp. at 691.[1] The Court of Appeals for the Second Circuit has also displayed some degree of hospitality toward efforts by fugitives to raise preliminary challenges to criminal proceedings. In *United States v. Weinstein*, 511 F.2d 622 (2d Cir.), *cert. denied sub nom. Austin v. United States*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975), for example, where the court reversed a district judge's appointment of counsel to represent draft evaders without their consent or approval, the court went on to note:

> We should make it clear that we do not intend to preclude Judge Weinstein from entertaining motions on behalf of fugitive defendants who have agreed that Professor Lusky or any other attorney represent them.

*Id.* at 629.

There is another possible justification for proceeding to the merits of Veliotis's claim. On several recent occasions, the Second Circuit has expressed concern about misuse of the RICO statute by overzealous prosecutors. *See, e.g., United States v. Malizia,* 720 F.2d 744 (2d Cir.1983); *United States v. Ivic*, 700 F.2d 51, 57, 64–65 (2d Cir.1983); *United States v. Huber*, 603 F.2d 387, 395–396 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). In *Huber*, the court said:

> [T]he potentially broad reach of RICO poses a danger of abuse where a prosecutor attempts to apply the statute to situations for which it was not primarily intended. Therefore, we caution against undue prosecutorial zeal in invoking RICO. We also emphasize to the district judges that when RICO is invoked each

set of facts must be evaluated independently.

The essence of the instant claim is alleged prosecutorial overreaching through misapplication of the RICO statute. Veliotis has charged that, as a matter of law, the stocks in question cannot be forfeited under RICO, and that the Government has made a wholly inadequate showing of its right to the restraining order. Veliotis has argued, further, that "having successfully invoked the processes of this court, *ex parte*, the Government now seeks to prevent a review of the restraining order on the ground that Mr. Veliotis is not personally subject to jurisdiction." Defendant's Memorandum at p. 25. The potential for abuse in such circumstances is troubling. The RICO statute and the limits of its application have presented the courts with complex and important legal questions and, independent of any duty toward or sympathy for Mr. Veliotis, the Court has a responsibility to proceed cautiously in this area. I do not believe this obligation should be suspended, at the behest of the Government, simply because the defendant is not present. As Justice Murphy stated, dissenting from the Supreme Court's dismissal of a fugitive's appeal in *Eisler v. United States*, 338 U.S. 189, 194–195, 69 S.Ct. 1453, 1455–1456, 93 L.Ed. 1897 (1949):

> [I]t is the importance of the legal issues, not the parties, which bring the case to this Court. Those issues did not leave when [the defendant] did. They remain here for decision; they are of the utmost importance to the profession and to the public.
>
> Law is at its loftiest when it examines claimed injustice even at the instance of one to whom the public is bitterly hostile.... Our country takes pride in requiring of its institutions the examination and correction of alleged injustice whenever it occurs. We should not permit an affront of this sort to distract us from the performance of our constitutional duties.

1. While the Government might suggest that Veliotis has managed to retain that presumption only by virtue of having fled the jurisdiction, it is beyond argument that he makes application to this Court as an innocent man.

*See also United States v. Lockwood,* 382 F.Supp. 1111 (E.D.N.Y.1974) (*quoting Eisler*).

█ In light of the constitutional nature of Veliotis's claim, the context in which it arose, and the fact that defendant will be bound by any determination this Court reaches on the merits, I believe it appropriate to entertain the motion. I recognize and regret the possibility, raised by the Government, that if successful in this matter, Veliotis might well convert his shares to cash and thereby ensure his ability to remain beyond the reach of United States authority. This argument is not without appeal, but the fact remains that if the stocks are not subject to forfeiture, the Government had no right to preliminary restraint of their disposition. I therefore address the merits of the claim below.

## II. *Unavailability of Forfeiture Sanction As a Matter of Law*

Title 18 U.S.C. § 1962(c) provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." Section 1962(d) makes conspiracy to violate § 1962(c) unlawful. Section 1963(a) sets forth the possible penalties for a violation of § 1962, including a maximum of twenty years' imprisonment, a $25,000 fine, or both upon conviction. It also mandates criminal forfeiture to the United States of any interest "acquired or maintained in violation of Section 1962," and "any interest in, ..., or property or contractual right of any kind affording a source of influence over, any enterprise which [the defendant] has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962."

In order to guarantee that assets ultimately forfeitable under § 1963(a) will not be dissipated, Congress provided in § 1963(b) that

[i]n any action brought by the United States under this section, the district courts of the United States shall have jurisdiction to enter such restraining orders or prohibitions, or take such other actions, including but not limited to, the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as it shall deem proper.

Under this subsection, the Government applied for and obtained from Judge Stewart the *ex parte* restraining order which currently prevents Veliotis from disposing of his stock in General Dynamics. According to the indictment, Veliotis utilized this property to afford himself a source of influence over the enterprise.

Veliotis urges strenuously that, as a matter of law, these stocks would not be forfeitable under § 1963(a)(2) even if he were convicted, and the restraining order must therefore be lifted. This argument is based on two premises: first, he asserts that the stock could not have afforded him a source of influence over the enterprise because, according to the indictment, the overt acts committed in furtherance of the conspiracy occurred between August 1, 1974 and January 20, 1981 and the great bulk of the stock in question was acquired later; second, he insists that his holdings represented only a *"de minimis* passive investment" which "could not have provided a source of influence over General Dynamics, much less an illegal Enterprise of which General Dynamics was not a member." Def.'s Mem. at 6.[2]

█ For the reasons set forth below, it is not necessary for me to resolve either issue. Having reviewed a letter in which the Government purports to explain the basis of the stock forfeiture, I have determined that the Government's theory is appropriately asserted under § 1963(a)(1) rather than § 1963(a)(2). Were it not for my be-

**2.** At various times during the period covered by the indictment, Veliotis owned between 48 and 114,659 shares of General Dynamics stock.

Ex.A. to Gross Aff. At no time did his holdings amount to more than two tenths of one percent of the corporation's outstanding stock.

lief that the shares may be forfeitable under § 1963(a)(1), and that Veliotis would dispose of his interest if given the opportunity, I would vacate the restraining order immediately. Instead, I believe it appropriate to continue the order pending a hearing at which the Government may attempt to show that Veliotis acquired or maintained his shares in violation of § 1962.

### III. Scope of RICO's Forfeiture Provisions

Considerable effort has been devoted by courts and commentators to tracing the history and policies behind RICO's forfeiture sanction. Briefly stated, Congress enacted RICO's novel criminal forfeiture provision with hopes of creating "a more potent weapon than fines or prison terms in an attempt to eradicate organized crime's economic base." *United States v. Walsh,* 700 F.2d 846, 857 (2d Cir.1983). The goal was to "punish, deter, incapacitate, and ... directly to remove a competing influence from the channels of commerce," 116 Cong. Rec. 18955 (remarks of Sen. McClellan), *quoted in Russello v. United States,* — U.S. ——, 104 S.Ct. 296, 303, 78 L.Ed.2d 17 (1983), and accordingly, the forfeiture sanction extends "to all property and interests, as broadly defined, which are related to the violations." H.R.Rep. No. 91-1549, p. 57 (1970) U.S.Code Cong. & Admin.News 1970, p. 4007, *quoted in Russello, supra,* 104 S.Ct. at 303.[3]

In furtherance of these goals, Congress provided, first, for forfeiture of "any interest [the defendant] has acquired or maintained in violation of section 1962." 18 U.S.C. § 1963(a)(1). The Supreme Court recently held that this expansive language encompasses any interest, whether or not it is an interest in the RICO enterprise, and includes any right to receive profits or proceeds stemming from the defendant's violation of § 1962. *Russello,* 104 S.Ct. at 300–301 (1983). Inexplicably, the Government did not allege in the indictment that it was entitled to forfeiture under § 1963(a)(1), as presumably it would be if profits from Veliotis's racketeering activities were used to purchase the stocks in question.

The Government has relied, instead, on the language in § 1963(a)(2) mandating forfeiture of any property or contractual right ... affording a source of influence over the enterprise.[4] Questions about the proper construction of this phrase have been addressed by the courts only infrequently. *See United States v. Thevis,* 474 F.Supp. 134, 143 (N.D.Ga.1979), *aff'd,* 665 F.2d 616 (5th Cir.1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303. This language has been construed to allow for the forfeiture of an elective or appointive office which has been corrupted by a defendant in pursuit of illegal conduct, *United States v. Rubin,* 559 F.2d 975 (5th Cir.1977), *vacated and remanded on other grounds,* 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978), but there remain certain difficulties in delineating the perimeter of the measure, especially where the property or contractual right bears no obvious relation to the conduct of the enterprise. I need not resolve these difficulties here,

---

3. The need for some nexus between a defendant's racketeering activities and any interest the Government seeks to forfeit is beyond question. Indeed, any construction of the forfeiture provision which allowed the Government to reach interests wholly untainted by any misconduct would raise grave constitutional problems. The importance of this nexus was recognized in *United States v. Huber,* 603 F.2d 387 (2d Cir. 1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), where the Court of Appeals for the Second Circuit determined that so long as RICO's forfeiture sanction "is keyed to the magnitude of a defendant's criminal enterprise," it is not subject to attack on grounds that it violates the Eighth Amendment proscription

on cruel and unusual punishments. *Id.* at 396–97.

4. Congress provided in § 1963(a)(2) for forfeiture of "any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise [the defendant] has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962." The critical element in this subsection, for purposes of achieving the ends sought by Congress, is obviously the forfeiture of "any interest in" the enterprise. However, General Dynamics is not named as the RICO enterprise or as a participant in it, and the stocks therefore do not fall within these terms.

however, because in an explanation intended to supply the rationale behind the § 1963(a)(2) forfeiture sought in the indictment, the Government made absolutely no attempt to conform its theory to the requirements of the statutory language. Indeed, the rationale serves only to demonstrate the facial inapplicability of § 1963(a)(2) to the present facts.

In a letter to the Court dated October 12, 1983, the Assistant United States Attorney wrote:

> [T]he forfeiture remedy of 18 U.S.C. § 1963 is far broader than as urged by Veliotis .... In this case, it is manifestly clear that *Veliotis' position as a key officer of General Dynamics and head of two of its subdivisions afforded him a source of influence* over the illegal enterprise, the success of which in fact depended on his ability and willingness to corrupt that position.
>
> Equally clearly, the shares were not acquired by Veliotis for purely independent, investment purposes, but *accrued to him as contractual rights only on account of his position*, and during the period he was abusing that position. (It should be noted that although the shares were not acquired by exercise of the options until 1982, the options themselves were awarded throughout the period of the racketeering conspiracy.)

(emphasis supplied). The prosecutor then proceeded to stress the goals of RICO's forfeiture provision and the valuable objectives to be served by expelling Veliotis from his continuing relationship with General Dynamics.

---

**5.** The Government's emphasis on the expansive construction given RICO's forfeiture provision may be appropriate where an interest or property right arguably falls within the language of the statute. But where the statute calls for a property right "affording a source of influence over the enterprise" and the Government makes no showing that even remotely meets this requirement, resort to broad policy objectives will not suffice. This method of attack inevitably suggests the "undue prosecutorial zeal in invoking RICO" against which, as noted above, the Second Circuit has cautioned repeatedly.

**6.** Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment allege

The correspondence excerpted above demonstrates what is either a gross misunderstanding of § 1963(a)(2) or else an obvious attempt to blur the limits of or the distinctions between § 1963(a)(1) and § 1963(a)(2). If Veliotis's corporate positions were, indeed, the source of his influence over the enterprise, the Government could have sought forfeiture of those positions. See *United States v. Rubin, supra.* It did not. If the stocks in question were purchased with kickback money, or if they were purchased under options "acquired in violation of section 1962," the Government could have sought forfeiture under § 1963(a)(1), as expansively construed by the Supreme Court in *Russello.* Unfortunately, the Government declined this approach as well. In short, absolutely nothing in the Government's explanation suggests any influence, direct or indirect, afforded by the shares over the conduct of the enterprise.[5]

In spite of this glaring deficiency, the Government may yet be able to demonstrate that Veliotis purchased the stocks in question with funds he amassed in violation of § 1962, or perhaps that his stock options were acquired as the indirect result of his misconduct. If so, the shares would be forfeitable under § 1963(a)(1). I am convinced that Veliotis will dispose of his shares if provided an opportunity, and in the exercise of the discretion granted district judges under § 1963(b), I shall therefore continue the order pending a hearing at which the Government will be required to establish some connection between the alleged racketeering activity and acquisition of the stocks.[6] I believe that a hearing

---

"the extent of the interest or property subject to forfeiture." The rule does not require that the defendant be put on notice of the grounds for forfeiture; thus, the validity of the indictment is not jeopardized by a change in the Government's theory. Moreover, as Veliotis was advised by the indictment that the Government was seeking forfeiture of his entire interest in General Dynamics, and this was all he was entitled to under the rule, he was not prejudiced by the Government's misplaced reliance on § 1963(a)(2).

At common law, a defendant in a criminal forfeiture proceeding was entitled to notice of the declaration of forfeiture. RICO's forfeiture provision was intended to reestablish a limited

is warranted in view of the disparity between the language contained in the indictment and the explanation provided by the Government. A hearing will also remove any uncertainty about whether the Government will be able to demonstrate any connection between the shares and the alleged wrongdoing at trial.

## IV. *Due Process Issues*

The parties have devoted considerable attention to the issue of whether Veliotis is *entitled* to this hearing under the Due Process Clause of the Fifth Amendment. The Government and Veliotis agree that due process rights are implicated when the exercise of a property interest is curtailed, Def's Mem. at 17; Gov't's Mem. at 5, and there can be no dispute that Veliotis's exercise of control over his stock has been curtailed. The parties disagree, however, about the nature and extent of the protections due.[7]

Veliotis relies on a line of cases wherein the federal courts have held that due process mandates provision of a post-seizure hearing following the entry of a restraining order under § 1963(b) or under the comparable criminal forfeiture provision found in the Continuing Criminal Enterprise statute, 21 U.S.C. § 848. *See, e.g., United States v. Crozier,* 674 F.2d 1293, 1297 (9th Cir.1982), *pet. for cert. filed,* 51 U.S.L.W. 3394 (Nov. 15, 1982) (When restraining order is issued, Government "may not wait until trial to produce adequate grounds for forfeiture" because defendant has no opportunity to cross-examine and Government does not assume burden of proof); *see also United*

*States v. Spilotro,* 680 F.2d 612 (9th Cir. 1982); *United States v. Long,* 654 F.2d 911 (3d Cir.1981) (Government may not rely on indictment alone; must afford defendant full adversary hearing); *United States v. Beckham,* 562 F.Supp. 488 (E.D.Mich.1983); *United States v. Veon,* 538 F.Supp. 237 (E.D.Cal.1982). *But see United States v. Scalzitti,* 408 F.Supp. 1014 (W.D.Pa.1975).

These courts have generally required that the Government demonstrate the likelihood of convincing a jury beyond a reasonable doubt of two things: first, that the defendant is guilty of violating the underlying criminal statute; and second, that the property at issue is subject to forfeiture. *Spilotro,* 680 F.2d at 618; *Long,* 654 F.2d at 915. *But see Beckham,* 562 F.Supp. at 490 (court rejects this standard because it is "extremely cumbersome" and "requires a court to conduct a mini-trial"; court adopts requirement that Government establish relationship between property and alleged violation as well as likelihood defendant would make property unavailable).

The prosecution argues that the decisions relied upon by Veliotis fail adequately to account for various important governmental interests and that they misapply due process principles developed by the Supreme Court. The Government stresses that due process requirements are above all "flexible," and that they call for only "such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In this instance, the Government contends, Veliotis

---

common law criminal forfeiture, and Rule 7(c)(2) was enacted in 1972 to assure that the appropriate notice is provided. Notes of the Advisory Committee on Rules, 1972 Amendment. There is no requirement, independent of Rule 7(c)(2), that an indictment refer to a potential criminal forfeiture.

7. I am convinced that due process did not require that Veliotis be provided with a hearing prior to Judge Stewart's entering the restraining order. The United States Supreme Court recognized in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), that pre-deprivation hearings may be dispensed with in certain "extraordinary circumstances," *id.* at 90, 92 S.Ct.

at 1999, and the Court established in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), that such circumstances are present where: (1) the seizure is necessary to achieve important governmental objectives such as enforcing criminal sanctions; (2) pre-seizure notice might frustrate the purposes of the statute by creating an opportunity for the defendant to conceal or dispose of the property at issue; and (3) the seizure is made by Government officials rather than by self-motivated private parties. *Id.* at 678, 94 S.Ct. at 2089. Each of these requirements was met by the affidavit submitted to Judge Stewart in the instant case. *See* Ex.A to Order to Show Cause.

is entitled to a "speedy hearing of the most meaningful kind—a trial on the merits," Gov't Supp.Mem. at 6, and that he need only demand such a hearing. The Government asserts that the temporary restraint on his property is based upon an indictment establishing probable cause, and that it strains common sense to find an indictment insufficient for this purpose when it is beyond question sufficient for restraint of a defendant's liberty pending trial.

The Government draws the Court's attention to the United States Supreme Court's recent decision in *United States v. Eight Thousand Eight Hundred and Fifty Dollars In United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) ("*$8,850*"), where the Court rebuffed a due process challenge to the Government's seizure of $8,850 and its failure to provide the owner with any hearing during the 18-month period before the institution of civil forfeiture proceedings. The Court determined that the basic Fifth Amendment right to be heard at a meaningful time "mirrors the concern of undue delay encompassed in the right to a speedy trial," 103 S.Ct. at 2012, and is most appropriately assessed by weighing the factors used to determine whether the speedy trial right has been violated, including the length of delay, the reason for delay, the defendant's assertion of his right and prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The Government also cites a firmly established policy of restricting pretrial discovery in criminal cases and of encouraging diligent pursuit of RICO forfeitures. Both policies would be threatened, according to the Government, if it is forced to provide a full adversary hearing prior to trial.

The problems associated with Government seizures under criminal forfeiture provisions are complex, and these matters are complicated immeasurably in the instant case because Veliotis's fugitive status, although no bar to this Court's consideration of his claim, must obviously be factored into any equation designed to reflect the parties' competing interests. As a result, this is a rather inappropriate occasion for establishing broad constitutional rules such as those propounded in *Crozier* and *Long* regarding the necessity for post-seizure hearings. In ordering a hearing, I rely then, solely on the discretion granted under § 1963(b), and I leave for another day the question whether due process requires a post-seizure hearing whenever a restraining order is entered in a RICO prosecution. I note in passing, however, that the Government's argument in favor of reliance on the probable cause determination of a grand jury loses considerable appeal in a case such as this, where the Government apparently misinterpreted the reach of § 1963(a)(2) in presenting the matter to the grand jurors. In addition, despite the holdings in *Spilotro* and other cases cited above, Veliotis has requested a hearing at which the Government need only show that "assuming the racketeering activity described in the Indictment occurred, [his] stock is subject to forfeiture." Def's Mem. at 24. Thus, the Government has little cause for concern that it will have to prepare and disclose its entire case prior to trial.

## V. *Applicable Standards*

Having reviewed the approaches taken by various courts and commentators to the question of what standards ought to be applied at a pretrial restraining order hearing, I have concluded that the most appropriate burden to impose on the Government in this particular case is that of demonstrating probable cause to believe the defendant's property is subject to forfeiture. For the reasons above, I entertain serious doubts as to whether there was an appropriate basis for the grand jury's finding of probable cause to believe the stocks are forfeitable. Requiring the Government to satisfy this Court that probable cause exists, and allowing the defendant an opportunity, through counsel, to present evidence and cross-examine the Government's witnesses, adequately accounts for the interests of both parties. *See* Comment, *Criminal Forfeiture and the Necessity for a Post-Seizure Hearing: Are CCE and RICO Rackets for the Government?* 57

St. John's L.Rev. 776, 798 (1983). Hearsay evidence, which is often permitted at the pretrial stages of criminal actions, *see, e.g.,* F.R.Crim.P. 5.1(a) (hearsay permitted at preliminary examination); F.R.Crim.P. 4(b) (arrest warrant may issue on hearsay evidence), will be permitted at this hearing as well. *See Harvey, supra,* 560 F.Supp. at 1087–88.

The matter will be scheduled for a hearing as soon as possible. The Assistant United States Attorney is directed to contact the Court immediately in order to provide it with an estimate of the time that will be required to present the necessary evidence.

SO ORDERED.