Reply Brief and    December 21, 1994
Deferred Appendix

Final Briefs    January 3, 1995

The Clerk is directed to schedule this case for oral argument on the same day, and before the same panel, as *Resolution Trust Corp. v. Frates,* No. 94–5251.

Resolution Trust Corporation

v.

John C. Adams; W.R. McCain; Hutson E. McCorkle; Paul S. Mears, Sr., D.D.S.; William E. Owens; Solomon F. Schick, Appellant.

Robert M. Vickery; Mark B. Borseine; Samuel P. Bell, III; Alexander M. Kasten; Andrew O. Pittman; Richard L. Paul.

No. 94–5331.

Nov. 21, 1994.

Before: GINSBURG, SENTELLE and ROGERS, Circuit Judges.

*ORDER*

PER CURIAM.

Upon consideration of the emergency motion to stay district court order pending appeal and request for expeditious consideration, it is

ORDERED that the motion for stay be denied. Appellants have not demonstrated the requisite likelihood of success on the merits to warrant the issuance of a stay pending appeal. *See Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C.Cir.1958).

Dec. 29, 1994.

Before: WILLIAMS, GINSBURG, and ROGERS, Circuit Judges.

*ORDER*

PER CURIAM.

Upon consideration of the renewed motion of Solomon F. Schick for stay pending appeal, and the response thereto, it is

ORDERED that the motion for stay be denied. Appellant has not demonstrated the requisite likelihood of success on the merits to warrant the issuance of a stay pending appeal. *See Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C.Cir. 1958).

**UNITED STATES of America,**

v.

**R. Alan EAGLESON.**

**Crim. A. No. 94–10054–NMG.**

United States District Court, D. Massachusetts.

Oct. 25, 1994.

Frederick E. Dashiell, Paul V. Kelly, U.S. Atty.'s Office, Richard L. Hoffman, Asst. U.S. Atty., Boston, MA, for U.S.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is the motion of the defendant, R. Alan Eagleson ("Eagleson"), to vacate an *ex parte* restraining order and a *lis pendens*. For the reasons stated herein, Eagleson's motion will be denied without prejudice.

## I. BACKGROUND

On March 2, 1994, the federal grand jury sitting in this District returned a thirty-two count indictment charging Eagleson with various counts of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1962(c) ("RICO"). The indictment also charged that 1) $2,000,000 in United States currency is subject to forfeiture, pursuant to 18 U.S.C. §§ 1963(a)(1) and (a)(3), as proceeds from Eagleson's alleged racketeering activity, and 2) in the event that the $2,000,000 is not recoverable upon conviction, the United States will seek forfeiture of certain substitute assets, pursuant to 18 U.S.C. § 1963(m), up to the value of $2,000,000.

Armed with that indictment, the United States sought to obtain an *ex parte* restraining order, pursuant to 18 U.S.C. § 1963(d)(1)(A), to prohibit Eagleson from transferring, dissipating, encumbering, alienating or otherwise disposing of certain assets identified in Eagleson's criminal indictment. The government also sought endorsement of memoranda of *lis pendens* with respect to certain properties identified in Eagleson's criminal indictment. After an *ex parte* hearing on May 5, 1994, this Court issued a restraining order with respect to an alleged $374,500 held in escrow for Eagleson by Labatt Breweries of Canada ("Labatt"). The Court, however, refused to issue the restraining order with respect to Eagleson's interest in three parcels of real estate ("the Three Properties") on the ground that those properties were, at most, substitute assets for which there is no statutory basis to restrain under 18 U.S.C. § 1963(d)(1)(A).[1] *Memorandum and Order*, May 5, 1994, at 5.

On May 19, 1994, the same federal grand jury returned a thirty-two count superseding indictment. That superseding indictment was substantially identical to the original indictment except for the allegation that the Three Properties were not substitute assets but rather assets derived directly or indirectly from racketeering activity in violation of 18 U.S.C. § 1962.

Re-armed with the superseding indictment, the United States made a second application for entry of a post-indictment restraining order against the Three Properties. This time, based upon a finding that the United

---

1. The properties involved are: a) 150 West 51st Street, Unit 19-18, New York, New York; b) Unit 103-W, 100 Evans Lane Manalpan, Florida 33462-3301; c) Flat B, 17 Pimlico Road, London SW1, England.

States had met its burden of showing probable cause that the Three Properties would be subject to forfeiture in the event that Eagleson is convicted, the Court issued the restraining order, pursuant to 18 U.S.C. § 1963(d)(1)(A). *Ex Parte Temporary Restraining Order,* May 31, 1994.

Eagleson, who is in Canada and has not yet submitted to the jurisdiction of this Court or been extradited, filed a motion on August 22, 1994, to vacate the *lis pendens* and restraining order. In his supporting memorandum, Eagleson argues that this Court should vacate the restraining orders because: 1) the Court has no jurisdiction over him as he is a Canadian citizen and resident, 2) the assets are not direct or indirect proceeds of racketeering activity, and 3) the Court lacks *in rem* jurisdiction over the London Property and the $374,500 allegedly held in escrow by Labatt in Canada.

## II. DISCUSSION

### A. *Eagleson's Refusal to Submit to this Court's Jurisdiction*

In his motion to vacate the restraining order, Eagleson raises the issue of this Court's lack of personal jurisdiction over him, and the Court, therefore, addresses that issue and its effect upon his motion to vacate.

■ This Court does not have personal jurisdiction over Eagleson because Eagleson has refused to submit to its jurisdiction. In *United States v. Catino,* 735 F.2d 718 (2d Cir.1984), the Second Circuit Court of Appeals reasoned that:

> [t]he intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending. This is true whether the defendant leaves the jurisdiction intending to avoid prosecution, or, having learned of charges while legally outside the jurisdiction, "constructively flees" by deciding not to return.

*Id.* at 722 (*citations omitted*).

A federal grand jury first indicted Eagleson on March 2, 1994. On that same day a warrant for his arrest was issued. That arrest warrant was returned unexecuted on August 4, 1994. Another arrest warrant was issued on August 11, 1994, following the return of the second superseding indictment. That Eagleson has retained counsel and moved to vacate the restraining order clearly indicates that he is aware and has notice of the indictment pending against him. Because Eagleson has such notice and has, nevertheless, refused to submit to the jurisdiction of this Court to answer that indictment, the Court regards him as a fugitive. *Id. See also United States v. $45,940 in United States Currency,* 739 F.2d 792 (2d Cir.1984) (where a Canadian citizen who refused to appear at his arraignment and submit to the court's jurisdiction was deemed a fugitive).

### B. *Fugitive Disentitlement Doctrine*

■ Because Eagleson is a fugitive, his motion to vacate is viewed with considerable circumspection. Eagleson's first argument is that the Court should vacate the restraining order because the Court lacks personal jurisdiction over him. It is particularly disingenuous, however, for a *fugitive* to rely on the Court's lack of personal jurisdiction to support his motion to vacate a restraining order issued pursuant to 18 U.S.C. § 1963. Indeed, the doctrine of fugitive disentitlement calls into question whether Eagleson even has standing to file such a motion.

The doctrine of fugitive disentitlement emanates from *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970). In that case, the Supreme Court held that an appellate court had discretion to refuse to entertain a fugitive's appeal. It explained that although an escape from custody and fugitive status "did not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of [the fugitive's] claims." *Molinaro,* 396 U.S. at 366, 90 S.Ct. at 498–99.

The doctrine of fugitive disentitlement rests on a principle of mutuality. The rationale is that a court should not afford a fugitive, who is unwilling to submit to its jurisdiction and stand trial for an alleged crime, the opportunity to improve his position by challenging the jurisdiction of the court. *See In*

*re Assets of Martin,* 1 F.3d 1351, 1356 (3d Cir.1993).

Since *Molinaro,* courts have extended the doctrine of fugitive disentitlement. *See United States v. Bravo,* 10 F.3d 79, 83–84 (2d Cir.1993) (and cases cited therein). Two courts have spoken directly to the issue of a court's discretion to refuse to hear the merits of a fugitive's motion to vacate restraining orders issued pursuant to an alleged RICO violation. *In re Assets of Martin,* 1 F.3d at 1356–57; *United States v. Veliotis,* 586 F.Supp. 1512 (S.D.N.Y.1984). Although the two courts arrived at different results, they both accepted the general proposition that the doctrine of fugitive disentitlement may apply to asset restraints. They recognized that courts do have discretion to refuse to hear a fugitive's motion to vacate restraining orders.

In *Veliotis,* the defendant moved the district court to lift an *ex parte* restraining order that was issued in a RICO case. The defendant argued 1) as a matter of law, the assets would not be forfeitable if he were to be convicted, and 2) the restraining order violated rights guaranteed to him by the Due Process Clause and the Eighth Amendment. *Veliotis,* 586 F.Supp. at 1514–15. The district court and all parties involved acknowledged, however, that whether the court should or should not decline to entertain the defendant's motion under the fugitive disentitlement theory remained within the sound discretion of the court.

Exercising its discretion, the court in *Veliotis* decided to address the merits of the motion. Its decision was based upon several factors. First, the court gave weight to the fact that "a fugitive defendant [was] seek[ing] to vindicate a right vouchsafed by the United States Constitution". *Id.* at 1515, 1517. Second, the court concluded that it was important that the defendant had not yet been convicted and found that the restraining orders should be lifted as a "matter of law." *Id.* at 1515–17. Third, the court reasoned that the defendant could not "opt out" of an adverse ruling and would thus be bound by either a favorable or unfavorable ruling. *Id.*

Similarly, in *In re Assets of Martin,* the Third Circuit Court of Appeals held that the application of the fugitive disentitlement theory was within the sound discretion of the court as it considered a defendant's motion to vacate restraining orders issued pursuant to 18 U.S.C. § 1963. Unlike the *Veliotis* Court, however, the Third Circuit applied the doctrine. *In re Assets of Martin,* 1 F.3d at 1356–57.

The facts in the *Martin* case are strikingly similar to those in the case at bar. There, the government was investigating a suspected "daisy chain" operation. Because it wanted to prevent the targets of the investigation from dissipating or hiding assets that might become forfeitable under RICO, the government sought an *ex parte* restraining order pursuant to RICO, 18 U.S.C. § 1963(d)(2). The district court issued the restraining order on the grounds that it could restrain substitute assets. *Id.* at 1354.

Three individuals and three corporations, all holders of assets restrained by the district court, appealed from the court order. With respect to five of the six appellants, the Third Circuit Court of Appeals reversed and held that substitute assets could not be restrained pre-conviction. *Id.* at 1362. The court, however, dismissed the appeal of one of the individual appellants because that appellant, who was living in Russia and refused to return to the United States to answer the indictment pending against him, was a fugitive. *Id.* at 1356. The Third Circuit held that:

> [i]n this case, we believe that inasmuch as [the defendant] is unwilling to submit to the jurisdiction of the criminal court in which he has been indicted and to abide to the consequences of the ultimate judgment of that court, we should not afford him the opportunity of challenging the validity of proceedings related to the criminal case.

*Id.* at 1357.

This Court is persuaded to adopt the reasoning of the Third Circuit Court of Appeals in the case at bar. It is true that, as in *Veliotis,* Eagleson would be bound by either a favorable or unfavorable result with respect to the restraint of his property, but, unlike the fugitive in *Veliotis,* Eagleson is not claiming a deprivation of his constitutional

rights. Indeed, Eagleson relies on the very fact of his self-created absence as a reason why the Court should vacate the restraining order. In addition, Eagleson's strongest argument, that the Three Properties are not directly or indirectly derived from racketeering activity, is a question of fact, not a question of constitutional import.

The Court recognizes that the First Circuit Court of Appeals has recently refused to apply the doctrine of fugitive disentitlement. *United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636 (1st Cir.1988) ("the *Pole* case"). That case, however, is distinguishable from the instant case on three important grounds:

1. The *Pole* case was a civil, *in rem* action not a criminal prosecution. The First Circuit held, in essence, that the civil action was not sufficiently related to the criminal proceedings. *Id. See also United States v. Eng,* 951 F.2d 461 (2d Cir.1991) (distinguishing the *Pole* case). In this case, the restraining order is itself part of the criminal proceedings.

2. The claimant in *Pole,* who was a fugitive, was unaware of the proceedings against his family's property. *Pole,* 852 F.2d at 644. Eagleson, on the other hand, has notice of the indictment pending against him and has retained counsel.

3. *Pole* was a forfeiture proceeding in which the claimant's property would be seized without possibility of return. *Id.* at 638–44. In contrast, the restraining order in this case merely preserves the fugitive's property until the time of trial.

In sum, *Pole* is not analogous to this case and therefore is not controlling.

■ Furthermore, it is not settled law that a defendant has a right to a hearing to challenge an *ex parte* order restraining assets issued pursuant to Section 1963. The Supreme Court in *United States v. Monsanto,* 491 U.S. 600, 615, n. 10, 109 S.Ct. 2657, 2666, n. 10, 105 L.Ed.2d 512 (1989), expressly withheld judgment on the question of whether the Due Process Clause entitled a defendant to a hearing to challenge an *ex parte* order restraining assets. The Second Circuit has held that such a hearing is required, *United States v. Monsanto,* 836 F.2d 74 (2d Cir.1987), but the First Circuit has not yet addressed the issue. The fact that a defendant who has subjected himself to the jurisdiction of the court in which he is indicted may not have a right to a hearing to test the validity of a restraining order weighs heavily against granting a fugitive such an opportunity.

## III. CONCLUSION

Eagleson has refused to submit to this Court's jurisdiction or to abide by the consequences of its ultimate judgment. He is, therefore, considered a fugitive by this Court and will not be afforded the opportunity to challenge the subject restraining order and *lis pendens. See In re Assets of Martin,* 1 F.3d at 1356–57. Accordingly, in the exercise of its permitted discretion, this Court does not reach the merits of Eagleson's motion. Eagleson will be afforded the opportunity to challenge the restraining order and the *lis pendens* if and when he submits to the jurisdiction of the Court. His motion to vacate will, therefore, be denied, without prejudice.

## ORDER

For the foregoing reasons, the defendant's motion to vacate the *lis pendens* and restraining order is **DENIED,** without prejudice.

So Ordered.