UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony SPILOTRO,
Defendant-Appellant.

No. 81–5760.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided June 29, 1982.

Rehearing Denied Aug. 17, 1982.

**614**

Oscar B. Goodman, Goodman, Oshins, Brown & Singer, Chtd., Las Vegas, Nev., for defendant-appellant.

Deborah Watson, Dept. of Justice, Washington, D. C., argued, for plaintiff-appellee; Lamond R. Mills, Las Vegas, Nev., on brief.

Before NELSON and REINHARDT, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

EAST, Senior District Judge:

## I. NATURE OF THE CASE

Anthony Spilotro appeals from an order of the District Court restraining him as officer, director and sole stockholder of Gold Rush, Ltd., from selling, transferring, encumbering or otherwise disposing of any of the property of Gold Rush during the pendency of proceedings under a RICO[1] indictment. The restraining order, which also applies to Spilotro's two RICO co-defendants and their agents and employees, provides that the defendants may engage in the lawful and ordinary course of retail business upon the posting of a $180,000 performance bond with full surety. We remand the cause for an evidentiary hearing.

## II. BACKGROUND

On July 14, 1981, appellant Spilotro was named in a nine-count indictment alleging that he and three co-defendants conducted the affairs of Gold Rush, Ltd., a Nevada corporation doing business as a retail jewelry store in Las Vegas, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), by dealing in stolen jewelry, committing wire fraud, and conspiring to do both.

Spilotro owns all the shares of the capital stock of Gold Rush. Count IX of the indictment charges that the interests of Spilotro and his co-defendants in Gold Rush are subject to forfeiture pursuant to 18 U.S.C. § 1963(a).

On the date of the indictment, the District Court granted the Government's ex parte motion for an order restraining the defendants from disposing of any title to, assets of or interest in Gold Rush during the pendency of the criminal proceedings. The order provided that Gold Rush would be permitted to engage in the lawful and ordinary course of retail business at the

1. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

Gold Rush store upon depositing an approved performance bond. The court further ordered that a hearing be held on or before August 10, 1981 to review the Government's motion for a restraining order and the establishment of a performance bond. The court appointed two appraisers to take an inventory of all the property of Gold Rush for purposes of establishing the amount of the performance bond, and ordered the defendants to make available for examination any property and documents requested by the appraisers.

The next day the District Court granted an ex parte motion of the Government requesting that the order of the previous day be amended to authorize the F.B.I. to utilize such force as was necessary to conduct the appraisal.

The appraisal was conducted on July 15. The appraisers estimated the retail value of the merchandise and fixtures at $600,000, the wholesale value at $300,000, and the liquidation value at $180,000. On July 24, the Government filed a motion requesting the court to set the amount of the performance bond at $600,000.

The defendant opposed the motion, and both parties were represented at a hearing on the matter held on August 17, 1981. Subsequent to the hearing, at which no evidence was introduced, the court, without entering formal findings of fact or conclusions of law, ordered that the performance bond be set at $180,000, the liquidation value of Gold Rush's assets.

## III. DISCUSSION

### A. Jurisdiction

■ Although interlocutory appeals are generally not permitted, there is a small class of cases "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528 (1949).

*See also Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

While the restraining order here is not entirely separable from the RICO proceedings, in the sense that those proceedings will finally adjudicate the question of whether the defendants' "interest" in the enterprise is subject to forfeiture, it is separable in the sense that the question of whether the statute and the Constitution permit such an order of such scope at this stage of the proceedings will not be answered by the disposition of the pending criminal trial. Nor will the ultimate outcome of the criminal proceedings determine what kind of evidentiary burden the Government must meet before a pretrial restraining order may be granted. Further, the right to continue to operate a business during the pendency of a trial unfettered by a performance bond which is allegedly prohibitively costly is too important to await the outcome of the criminal proceedings.

■ In *United States v. Crozier*, 674 F.2d 1293, 1297 (9th Cir. 1982), this court held that a pretrial restraining order issued under the Continuing Criminal Enterprise statute, 21 U.S.C. § 848, which restrained the transfer of nearly all of the defendants' real and personal property, was an appealable interlocutory order. The court noted that a denial of interlocutory review might cause the defendants' rights to be irreparably lost or impaired because the due process challenge to the order would become moot upon final disposition of the criminal trial. The *Crozier* decision also noted that permitting an interlocutory appeal from the restraining order would not violate the policy of avoiding excessive delay because the fact that the issues raised on appeal are collateral to the outcome of the criminal trial permits the District Court to retain jurisdiction during the interlocutory appeal and proceed with the criminal trial. *Id.* at 1297. *See also United States v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980). These same considerations apply in this case and compel a finding that this court has jurisdiction to entertain Spilotro's appeal.

■ Although Gold Rush did not seek to participate in the post-seizure hearing to permit continuation of the restraining order and filed no notice of appeal, it seeks to join Spilotro's appeal as an "aggrieved party," citing *United States v. Hubbard*, 650 F.2d 293, 314 (D.C.Cir.1980). That case held that Federal District Courts have ancillary jurisdiction in criminal proceedings to hear claims relating to seized property, even when made by strangers to the criminal case. *Hubbard* went on to suggest, however, that it would be procedurally inappropriate for a stranger to a criminal case to seek relief by way of writ of mandamus in the Court of Appeals without first having sought relief in the District Court, saying: "It is the trial court and not this court that should engage in the initial consideration of the interests at stake . . . ." *Id.* at 309.[2] We agree, and we decline to exercise jurisdiction over Gold Rush's appeal, although Gold Rush may seek to participate by appropriate motion in the hearing on remand.

B. *Jurisdiction to Enter the Restraining Order*

■ Spilotro presses several alternative arguments in support of his contention that the District Court erred in entering a restraining order affecting the assets of Gold Rush. First, he focuses on the language of 18 U.S.C. § 1963(b), which grants the District Court jurisdiction to enter restraining orders and to set performance bonds, "in connection with any property or other interest subject to forfeiture under this section, as it shall deem proper." Spilotro contends that property does not become "subject to forfeiture" until the defendant is convicted.

The legislative history of the Act does not support such a narrow reading. The House Report states that the purpose of § 1963(b) is to provide "for the entering of restraining orders and prohibitions and the requiring of performance bonds to prevent *pre-conviction* transfers of property to defeat

the purposes of the new chapter." H.R. Rep.No.91–1549, 91st Cong. 2d Sess. 57 reprinted in [1970] U.S.Code Cong. & Admin. News, pp. 4007, 4033. (Emphasis added.) This purpose could obviously not be accomplished if restraining orders could only be entered after a defendant had been convicted.

Further, analysis of the language of paragraphs (b) and (c) of § 1963 indicates that the court is authorized to issue restraining orders prior to conviction. Paragraph (b) of § 1963 authorizes the issuance of a restraining order "in any action," while paragraph (c) authorizes the court to act only "upon conviction" of the defendant. It is clear that Congress intended to limit the District Court's authority under paragraph (c) to a particular phase of the criminal proceeding; *i.e.*, post-conviction. But no such limitation was placed on the District Court's authority under paragraph (b); rather, the court is authorized to issue restraining orders "in any action" under § 1963. Thus, while paragraph (c) refers only to post-conviction procedures, paragraph (b) authorizes the court to issue restraining orders both prior to and after conviction.

We conclude that § 1963(b) grants District Courts jurisdiction to enter restraining orders and to require performance bonds in connection with property which will be subject to forfeiture if the defendant is convicted.

C. *Adequacy of the Hearing*

Spilotro next suggests that his due process rights were violated both because he was not given notice or a hearing before the initial ex parte issuance of the restraining order and because the Government made an inadequate factual showing at the subsequent hearing to permit the District Court to continue the restraining order. RICO does not itself establish a specific procedure to be followed by the District Courts in

---

2. In a different context, we have allowed an aggrieved party to obtain relief by way of mandamus in this court after having unsuccessfully attempted to obtain relief in the District Court. *See United States v. Sherman*, 581 F.2d 1358

(9th Cir. 1978) (members of the news media objected in District Court to judge's order that news media "stay away" from jurors; mandamus held to be proper remedy).

issuing restraining orders or setting performance bonds. Thus we confront the question of what procedural safeguards due process demands when a RICO defendant is restrained from disposing of his property during the pendency of a criminal proceeding.

■ The initial ex parte restraining order here clearly affected Spilotro's property and liberty interests in that it flatly prevented him from disposing of his property or engaging in his business at the Gold Rush store. Because the order deprived Spilotro of his interest in "continued possession and use of the goods," due process protections apply. *Fuentes v. Shevin*, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). Neither the fact that the deprivation was temporary, pending ultimate resolution at the criminal trial, nor the fact that the defendant was later accorded an opportunity to regain limited use of the property upon the posting of a performance bond, renders the order any less of a "deprivation" for the due process purposes. *Id.* at 84–85, 92 S.Ct. at 1996–1997; *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). While the length or severity of the deprivation must be weighed in determining the appropriate form of hearing due process requires, it is not determinative of the right to a hearing of some kind. *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975).

■ Nonetheless, pre-deprivation hearings may be dispensed with in certain "extraordinary circumstances." *Fuentes v. Shevin*, 407 U.S. at 90, 92 S.Ct. at 1999. Those circumstances exist when the Government seizes property for forfeiture, if (1) the seizure is necessary to achieve important governmental purposes, such as preventing continued illicit use of the property and enforcing criminal sanctions, (2) preseizure notice and hearing might defeat the purposes of the statute by creating an opportunity for the defendant to destroy, conceal, or remove the property to another

jurisdiction, and (3) the seizure is initiated by Government officials who determine that it is appropriate under the circumstances, rather than by self-interested private parties. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974); *Ivers v. United States*, 581 F.2d 1362, 1368 (9th Cir. 1978). Each of these circumstances exists here, and we find no due process violation by virtue of the fact that the defendant was not granted preseizure notice and hearing.

■ Due process does demand, however, an "opportunity to be heard 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552 [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] . . . (1965)." *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 779–80 (9th Cir. 1982). Because a RICO defendant's business may well constitute the source of a substantial portion of his livelihood, and because a restraining order such as the present one has the effect of halting business activity, it is important that the defendant be afforded a prompt hearing once the restraining order has been entered.

■ The Government may not wait until trial to produce adequate grounds for forfeiture. *United States v. Crozier*, 674 F.2d at 1297. *See also Ivers v. United States*, 581 F.2d at 1368. In *Crozier*, this court confronted the restraining order provision of the continuing Criminal Enterprise statute, 21 U.S.C. § 848(d), which is similar to the provision at issue, and held that "[i]n the absence of specific language to the contrary, the district court must apply the standards of Rule 65 of the Federal Rules of Civil Procedure, which requires an immediate hearing whenever a temporary restraining order has been granted *ex parte.*" *United States v. Crozier*, 674 F.2d at 1297.

Spilotro next contends that his due process rights were violated because the Government made an inadequate evidentiary showing at the postseizure hearing to permit continuation of the restraining order. Spilotro relies upon *United States v.*

*Mandel,* 408 F.Supp. 679 (D.Md.1976), which, without attempting to definitively decide the minimum requirements of due process in the § 1963 context, applied the civil standards for issuance of preliminary injunctions, saying that "they may provide some guidance as to the minimal requirements for the entry of a pre-conviction order in a criminal case." *Id.* at 682. Those requirements are that the petitioner show: (1) likelihood of prevailing on the merits at trial, (2) that irreparable harm will be suffered in the absence of relief, (3) that issuance of the injunction will not substantially harm other parties interested in the proceedings, and (4) that the public interest supports issuance of the injunction.

The *Mandel* court held that to meet the first requirement, the Government must show that "it is likely to convince a jury beyond a reasonable doubt that the defendants are in fact guilty of the crimes charged." *Id.* at 683. The court found, however, that a judicial finding that the Government had met this burden would be inconsistent with the defendant's presumption of innocence, and would render a fair trial less likely.

In considering this same argument in the context of a pretrial restraining order under the Continuing Criminal Enterprise statute, the court in *United States v. Long,* 654 F.2d 911 (3d Cir. 1981), found no violation of the presumption of innocence, saying: " 'The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it has no application to a determination of the rights of a pre-trial detainee.' " *Id.* at 916 n.8, *quoting Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 1870–1871, 60 L.Ed.2d 447 (1979). We agree, and we find no violation of the presumption of innocence here.

**3.** The defendant also argues that the prosecution must show some likelihood that the property will be transferred if the restraining order is not issued. We need not decide whether any such showing is required in cases involving other types of property. Here the property consists of jewelry and similar items which may be readily concealed, removed, or disposed

We hold that the Government's burden in obtaining a restraining order in a RICO prosecution is similar to that in a continuing criminal enterprise prosecution:

> Before a court can issue such a restraining order ... the government must demonstrate that it is likely to convince a jury, beyond a reasonable doubt, of two things: one, that the defendant is guilty of violating the Continuing Criminal Enterprise statute and two, that the ... properties at issue are subject to forfeiture under the provisions of [the statute]. [Citations]. In addition, these determinations must be made on the basis of a full hearing; the government cannot rely on indictments alone.

*United States v. Long,* 654 F.2d at 915. *See also United States v. Crozier,* 674 F.2d at 1298. It is not necessary that the hearing duplicate the pending criminal trial; the prosecution need only demonstrate the *probability* that the jury will convict the defendant and find the properties subject to forfeiture.[3] The prosecution must, however, produce sufficient evidence to permit the District Court to independently assess whether the burden has been met; it may not rely simply upon the indictment and its own assessment of the strength of its case.

The Government failed to meet its burden in this case. No evidence whatsoever was presented at the postseizure hearing. Aside from the indictment, the only indication of the strength of the Government's case was the Government's unsupported assertion in a prehearing motion that it intended to "utilize substantial amounts of physical evidence (including over 1,000 pieces of stolen jewelry seized from Gold Rush) and electronically recorded conversations, making conviction likely." Because none of this evidence was presented to the District Court, it was in no position to inde-

of through licit or illicit means. Such property by its very nature poses the threat that it will be disposed of prior to trial. Accordingly, we find that in the case of property of the type here involved, the Government is not required to make any independent showing regarding transfer.

pendently determine whether the Government's assertion was merely an expression of prosecutorial optimism or whether the evidence was indeed probative, admissible, and likely to establish the defendants' guilt.

### D. *Other Issues*

Spilotro next contends that the restraining order here is improper insofar as it affects the assets of Gold Rush because RICO provides only for forfeiture of a defendant's "interest" or property rights in an enterprise, not the assets of the enterprise or the enterprise itself. Spilotro further contends that the restraining order here is improperly directed at the Gold Rush corporation, which is not a party to the proceedings. Spilotro also contends that his wife has a fifty percent community property interest in the Gold Rush stock, and that it was therefore error for the District Court to enter a restraining order affecting all of that stock. Next, Spilotro contends that the $180,000 performance bond was prohibitively high, that it was not based upon the appraisal of the merchandise at the Gold Rush store, and that the appraisal was in any event inaccurate and was obtained in violation of his Fourth Amendment rights. Finally, he contends that the portion of the order requiring the defendants to "make available those documents and permit examination of that property requested by the appraiser(s) as necessary for the fulfillment of this order" violates his Fifth Amendment right against self-incrimination.

Because we remand this case for a full evidentiary hearing, we decline to decide these issues. If the Government fails to meet its evidentiary burden for the issuance of a restraining order, these issues will become moot. Otherwise, Spilotro will have the opportunity to present and support these claims.

The cause is remanded to the District Court for a full evidentiary hearing and adjudication of the issues presented. Such hearing shall be commenced and continued without unreasonable delay. Thereupon the District Court shall either reaffirm, modify or vacate the restraining order, all to be done in conformity with the foregoing opinion.[4]

The panel retains appellate jurisdiction of this cause numbered 81–5760 and its present records and files. Either party may appeal the ultimate order of the District Court on remand by an appropriate notice of appeal. Either party may supplement the record on appeal in cause No. 81–5760 by the paying of the Clerk's required fee.

REMANDED.

---

**4.** The Federal Rules of Evidence "provide that they 'apply generally to ... criminal cases and *proceedings* ...' Fed.R.Evid. 1101(b) (Emphasis added). Clearly then, unless an exception applies, this being a criminal proceeding, the Federal Rules of Evidence, including Fed.R. Evid. 802 (barring hearsay), applies to an adversary hearing for the purpose of continuing a restraining order under 18 U.S.C. § 848." *United States v. Veon*, 538 F.Supp. 237, 248–249 (E.D.Cal.1982).