**UNITED STATES of America, Appellee,**

v.

**Peter MONSANTO,
Defendant–Appellant.**

**No. 436, Docket 87–1397.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1987.

Decided Dec. 21, 1987.

Rehearing In Banc Granted
Jan. 29, 1988.

Mark C. Hansen, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., John F. Savarese, Asst. U.S. Atty., New York City, of counsel), for appellee.

Edward M. Chikofsky, New York City, for defendant-appellant.

Neal R. Sonnett, Benedict P. Kuehne, Sonnett, Sale & Kuehne, Miami, Fla., amicus curiae for Nat'l Ass'n of Criminal Defense Lawyers.

Before OAKES, CARDAMONE and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This is an expedited interlocutory appeal from an order of the United States District Court for the Southern District of New York, Robert J. Ward, *Judge*, denying a motion to vacate or modify an *ex parte* post-indictment restraining order entered by John F. Keenan, *Judge*, pursuant to a provision of the Comprehensive Forfeiture Act of 1984 ("CFA"), 21 U.S.C. § 853(e)(1)(A) (Supp. III 1985). The restraining order prohibits defendant Peter Monsanto from alienating or in any way depreciating two parcels of real property that were specified in an indictment as "constituting and derived from the proceeds" of violations of Title III of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* (1982 and Supp. III 1985). Monsanto challenges the application of the CFA to this property, which he claims to need in order to retain counsel of choice for his pending trial on substantive RICO, RICO conspiracy, narcotics conspiracy, Continuing Criminal Enterprise ("CCE") and firearms charges.

Monsanto argues that Congress did not intend the CFA to apply to property needed to pay for legitimate attorney's fees. He contends, moreover, that if Congress did intend the CFA to apply to property needed for that purpose, the statute would then violate the qualified sixth amendment right to counsel of choice. Monsanto challenges not only the post-indictment restraint provision, 21 U.S.C. § 853(e)(1)(A) (Supp. III 1985), but also the post-conviction "relation back" provision, 21 U.S.C. § 853(c) (Supp. III 1985), which allows the government to seek post-conviction forfeiture of property transferred to a third person. The latter provision, Monsanto contends, deters private counsel from representing defendants as long as there is a threat that attorney's fees will be subject to forfeiture in the event of conviction.

### Background

In an indictment unsealed on July 8, 1987, Monsanto was charged with one sub-

stantive RICO count, 18 U.S.C. § 1962(c) (1982), one RICO conspiracy count, 18 U.S.C. § 1962(d) (1982), one conspiracy to distribute narcotics count, 21 U.S.C. § 846 (1982), one CCE count, 21 U.S.C. § 848 (1982 & Supp. III 1985), and four illegal possession of a firearm counts, 18 U.S.C. Appendix § 1202(a) (1982).[1] The indictment also specified two parcels of residential real property, valued at $335,000 and $30,000, as well as $35,000 in cash, as being subject to forfeiture under 21 U.S.C. § 853(a) (Supp. III 1985). On the same day, Judge Keenan entered an *ex parte* restraining order, 21 U.S.C. § 853(e)(1)(A) (Supp. III 1985), prohibiting Monsanto from directly or indirectly transferring or encumbering the residential properties.[2]

At the initial pre-trial conference before Judge Ward on July 31, 1987, James Merberg, an attorney from Boston, audited the proceedings but declined to enter a formal appearance on behalf of Monsanto. The court was informed by the Assistant United States Attorney ("AUSA") that "[Merberg] and Mr. Monsanto are exploring the circumstances under which he would be retained." At a later conference on August 6, 1987, Edward M. Chikofsky, counsel *pro tem* appearing on behalf of Monsanto for the limited purpose of presenting Monsanto's challenge to the forfeiture provisions, informed Judge Ward that the threat of forfeiture of attorney's fees was specifically what deterred Mr. Merberg from representing Monsanto. Although Merberg did not attend this conference, the AUSA described his own discussions with Merberg concerning a possible agreement by the government not to seek forfeiture of attorney's fees. The AUSA stated that the government would not enter into such an agreement. Judge Ward then stated his position that invasion of the forfeitable assets could be allowed to pay attorney's fees for Monsanto's counsel of choice, but that

such exemption from forfeiture would be allowed only to the extent of the rates established by the Criminal Justice Act ("CJA"). 18 U.S.C. § 3006A (1982 and Supp. IV 1986).

On August 21, 1987, Monsanto's counsel *pro tem* filed a motion to vacate or modify the restraining order by (a) permitting Monsanto to use the restrained assets to retain private trial counsel, and (b) exempting legal fees paid to that counsel from post-trial forfeiture. Judge Ward held a hearing on this motion on August 28, 1987. The court accepted that Monsanto was rendered *de facto* indigent by the restraining order. Moreover, the court was informed by counsel *pro tem* that Monsanto had contacted several "potential trial counsel," but that none of them was willing to represent Monsanto for the CJA-level compensation that Judge Ward had suggested at the August 6, 1987 conference. Counsel *pro tem* also submitted an empirical study prepared by the Association of the Bar of the City of New York indicating that private attorney's fees in RICO and CCE cases routinely exceed CJA rates. Although Judge Ward stated that some potential trial counsel should have appeared to present a proposed fee arrangement, he did not depart from his position that he would allow only CJA-level compensation. Judge Ward entered an order denying Monsanto's motion "without prejudice to renewal upon the submission of further factual and legal argument."

On September 4, 1987, Monsanto's counsel *pro tem* filed a notice of appeal. On September 8, 1987, Monsanto moved for an expedited appeal, which was granted. Oral argument was set for October 20, 1987. On October 13, 1987, Monsanto moved for a stay of trial pending appeal. The trial date for Monsanto and thirteen co-defendants was originally set for November 30, 1987. On the day after oral argument,

---

1. This section was repealed effective November 15, 1986 by Pub.L. No. 99–308, § 104(b), 100 Stat. 459 (1986). All the violations of this section with which Monsanto is charged occurred prior to that date.

2. We note that the restraining order does not apply to the $35,000 in cash, and that Judge Ward found that the restraining order rendered Monsanto indigent and therefore eligible for appointed counsel. We cannot determine on this record whether Monsanto actually has $35,000 at his disposal, or what impact that might have upon his ability to retain private counsel.

however, Judge Ward adjourned the commencement of trial until January 4, 1988.

We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1) (1982).

## Discussion

### A. *Ripeness*

■ At the outset, we must determine whether this controversy is ripe for adjudication. The government argues that it is not, mainly because Monsanto has failed to make an adequate record of the effect of the forfeiture provisions on his ability to obtain counsel of choice. *See United States v. Gelb*, 826 F.2d 1175, 1176–77 (2d Cir.1987).[3] While we conclude, for reasons explained below, that this case must be remanded for further proceedings, we do not agree that Monsanto has failed adequately to demonstrate the impact of the forfeiture provisions on his ability to retain counsel.

It is true, as the government points out, that no attorney appeared at the motion hearing or thereafter to present a proposed fee arrangement to Judge Ward. Nevertheless, the district court had already held two pretrial conferences at which Monsanto's *de facto* indigence and efforts to obtain counsel were made known to the court. The court had been informed, not only by Monsanto's counsel *pro tem* but also by the AUSA, that James Merberg had made his representation of Monsanto contingent upon obtaining an agreement from the government not to seek forfeiture of attorney's fees. Then, at the motion hearing, the court was informed that none of the attorneys contacted by Monsanto was interested in representing him for the CJA-level compensation that Judge Ward was willing to allow.

For purposes of ripeness, therefore, we think it would have been a futile exercise for Monsanto to bring attorneys who were uninterested in CJA-level compensation into court simply to hear Judge Ward reiterate his position that invasion of the assets would be allowed only to pay CJA rates. *See Image Carrier Corp. v. Beame*, 567 F.2d 1197, 1201–02 (2d Cir.1977), *cert. denied*, 440 U.S. 979, 99 S.Ct. 1785, 60 L.Ed.2d 239 (1979). That no attorney made such an "appearance" arguably demonstrates the very "chill" that Monsanto claims to be the effect of the forfeiture provisions on private attorneys who would otherwise represent RICO and CCE defendants. Such an appearance by an attorney would not "significantly advance our ability to deal with the legal issues presented nor aid us in their resolution." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978). Any further delay before appeal, furthermore, would only have caused hardships for Monsanto, since the case was already set for trial, and his trial preparation would obviously be affected by the resolution of the issue presented on appeal. We note also that Monsanto and many co-defendants are detained pending trial.

*United States v. Gelb*, 826 F.2d 1175 (2d Cir.1987), upon which the government heavily relies, is clearly distinguishable. In *Gelb*, the defendants failed to pursue their motion to vacate and/or modify a post-indictment restraining order in the district court, representing to the court that an impending agreement with government counsel would probably moot the issue. When the agreement fell through, defendants then appealed from the restraining order to this court without giving the district court any opportunity to consider or decide their motion, and moved here to stay the restraining order pending appeal and expedite the appeal. We concluded that the restraining order was appealable, but denied the motions because, in view of defendants' failure to make an appropriate record before the district court and provide that court with an opportunity to "fine tune" the restraining order to meet defend-

---

3. *Gelb* dealt with the forfeiture provisions of 18 U.S.C. § 1963 (Supp. III 1985); which apply to RICO prosecutions. These provisions were also enacted by the CFA in 1984, and are essentially identical to the provisions of 21 U.S.C. § 853 (Supp. III 1985) which apply here. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 197–98, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3380–81.

ants' objections, there was little prospect of success on appeal. *Id.* at 1176–77.

Here, on the contrary, Judge Ward did rule on Monsanto's motion, and he made clear his intention to adhere to the CJA-level limit on compensation. There is thus nothing to "fine tune" here, just a clear issue to be decided. The effect of the forfeiture provisions on Monsanto's ability to retain counsel of choice is accordingly certain enough for our review at this time. *See United States v. One Parcel of Land,* 614 F.Supp. 183, 185 (D.C.Ill.1985) (where attorneys had not filed appearances and had not yet accepted any fees, issue whether attorney's fees are excluded from forfeiture under 21 U.S.C. § 881 (Supp. III 1985) was nonetheless ripe for adjudication); *United States v. Rogers,* 602 F.Supp. 1332, 1348 (D.Colo.1985) (where attorneys entered "conditional appearances" which would be revoked if attorney's fees were held forfeitable under 18 U.S.C. § 1963(a)(3) (Supp. III 1985), court proceeded to decide forfeiture issue).

Nor do we regard the language of Judge Ward's order denying the motion to vacate, that it was "without prejudice to renewal upon the submission of further legal and factual argument," as precluding at this time. Any application is subject to such renewal as a litigation progresses, but that does not detract from the fact that an order has been entered refusing to dissolve or modify an injunction within the meaning of 28 U.S.C. § 1292(a)(1) (1982). *Contrast City of Fort Lauderdale v. Freeman,* 197 F.2d 122, 124 (5th Cir.1952) (appeal dismissed where no ruling made on motion to dissolve injunction, hearing of which was deferred).

## B. *Statutory Claim*

■ Monsanto's first contention is that we need not even address the constitutionality of the forfeiture provisions because Congress never intended the provisions to apply to property used to pay legitimate attorney's fees. Several courts have

reached this conclusion.[4] *See, e.g., United States v. Estevez,* 645 F.Supp. 869 (E.D. Wis.1986); *United States v. Ianniello,* 644 F.Supp. 452 (S.D.N.Y.1985); *United States v. Rogers,* 602 F.Supp. 1332 (D.Colo.1985). *Compare United States v. Badalamenti,* 614 F.Supp. 194, 198 (S.D.N.Y.1985) (finding that Congress did not intend post-conviction forfeiture of fees already paid to an attorney, but indicating that pre-trial restraint of assets that would otherwise be used to retain private counsel is a "different problem[ ]").

It is clear that Congress, in enacting the CFA, intended to close a loophole in the previous criminal forfeiture scheme that had allowed defendants to evade forfeiture by means of third party transfers prior to conviction. *See* S.Rep. No. 225, 98th Cong. 1st Sess. 196, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3379 (hereinafter "Senate Report"). The courts that have found no Congressional intent to cover legitimate attorney's fees have essentially concluded that Congress only intended the CFA to reach *fraudulent* third party transfers, such as "sham" attorney's fees. *See United States v. Harvey,* 814 F.2d 905, 913–16 (4th Cir.1987) (surveying the cases but rejecting their position), *reh'g in banc granted sub nom. United States v. Caplin & Drysdale, Chartered* June 11, 1987 (hereinafter *"Harvey"*). We agree, however, with *Harvey,* the only other circuit court case that has addressed this issue directly, that the cases finding Congressional exemption of non-fraudulent attorney's fees err in their statutory interpretation.

First, the plain language of the statute is categorical and contains no exception for attorney's fees: "Any person convicted of a violation ... shall forfeit to the United States ... (1) *any property* constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation...." 21 U.S.C. § 853(a) (Supp. III 1985) (emphasis added). The Act

---

**4.** Many of the cases addressing the statutory and/or constitutional issue have done so in the context of challenges to forfeiture under 18 U.S.C. § 1963 (Supp. III 1985), the criminal forfeiture provision of RICO. These authorities are equally pertinent here, since the RICO and CCE forfeiture provisions are virtually identical. *See supra* note 3.

allows only one exception to forfeiture of property transferred to a third person, and that exception does not mention fraud at all:

> Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a *bona fide purchaser* for value of such property who at the time of purchase was *reasonably without cause to believe that the property was subject to forfeiture* under this section.

21 U.S.C. § 853(c) (Supp. III 1985) (emphasis added).

As the Fourth Circuit observed in *Harvey*, the common law meaning of "bona fide purchaser" is simply "without notice," and an attorney may have notice that property is subject to forfeiture even though his receipt of such property in exchange for legitimate and necessary legal defense services is not fraudulent or less than an arm's length transaction. *See Harvey*, 814 F.2d at 917. *But cf. United States v. Thier*, 809 F.2d 249 (5th Cir.1987) (court does not suggest that payment of fees to counsel will always immunize fees from post-trial forfeiture, but only that a defense attorney's knowledge of the charges against client does not *ipso facto* disqualify attorney's claim to be bona fide purchaser).

Second, since the legislative history to which Monsanto and several courts point is inconclusive and does not clearly express a legislative intent that is contrary to the plain meaning of the statutory language, that meaning must prevail. *See United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (where statutory language unambiguous, that language must ordinarily be regarded as conclusive, in absence of clearly expressed legislative intent to contrary) (partially quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). *See also Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 298–99, 78 L.Ed.2d 17 (1983) (quoting *Turkette*).

Three passages in the legislative history have been most relied upon by the courts that have construed the statute to exempt legitimate attorney's fees from forfeiture. The first is a footnote in a House report accompanying an early draft of the 1984 CCE forfeiture amendments: "[n]othing in this section is intended to interfere with a person's Sixth Amendment right to counsel." H.R.Rep. No. 845, Part 1, 98th Cong., 2d Sess. 19 n. 1 (1984). As the court in *Harvey* concluded, this footnote is somewhat cryptic and could mean any of a number of things, none of which amounts to a clearly expressed Congressional intention that attorney's fees should only be forfeitable when based upon sham or fraudulent transactions. *See Harvey*, 814 F.2d at 918. Furthermore, the very next sentence of that report belies any intention to establish a statutory rule concerning forfeiture of attorney's fees: "The Committee, therefore, does not resolve the conflict in District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case." H.R. Rep. No. 845, *loc. cit.*

The second passage, also a footnote, appears in an analysis by the Senate Judiciary Committee of the *bona fide* purchaser exception in the CFA: "[t]he provision is to be construed to deny relief to third parties acting as nominees of the defendant or who have knowingly engaged in sham or fraudulent transactions." Senate Report 209 n. 47, 1984 U.S.Code Cong. & Admin. News 3392 n. 47. Again, we agree with *Harvey* that this statement does not state or imply that *only* nominee, sham or fraudulent transactions may lead to third party forfeiture, in contravention of the plain meaning of the statute. *See Harvey*, 814 F.2d at 916–17. Indeed, one court went so far as to interpolate the word "only" (bracketed, to be sure) into its quotation of this legislative history in support of its conclusion that only sham attorneys' fees were subject to forfeiture. *See United States v. Rogers*, 602 F.Supp. 1332, 1347 (D.Colo.1985). We agree that the addition

is required to sustain the position; we do not agree that the addition is appropriate.

The third passage comes from the same Senate report: "[t]he purpose of this provision is to permit the voiding of certain pre-conviction transfers and so close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were *not 'arm's length' transactions.*" Senate Report 200–01, 1984 U.S.Code Cong. & Admin. News 3383, 3384 (emphasis added). The very next sentence of the report states, however: "[o]n the other hand, this provision should not operate to the detriment of innocent *bona fide* purchasers of the defendant's property." *Id.* at 201, 1984 U.S. Code Cong. & Admin.News 3384. Read as whole, this passages establishes with clarity only that *"bona fide* purchasers" in the normal sense, *i.e.,* those who have no notice of the property's taint, will not be subject to the forfeiture penalty. There is certainly no clear expression of an intention to exempt from forfeiture fees paid to attorneys who are on notice, solely because those payments constitute legitimate fees for actual services rendered.

In sum, the evidence of contrary legislative intent, viewed both singly and in combination, is thoroughly ambiguous, and is certainly not clear enough to warrant departure from the plain meaning of the statute. The courts that have read the "bona fide purchaser" exemption to include legitimate attorney's fees have typically done so in order to avoid confronting the sixth amendment question which results from a contrary interpretation. *See, e.g., United States v. Estevez,* 645 F.Supp. 869, 870–71 (E.D.Wis.1986); *United States v. Ianniello,* 644 F.Supp. 452, 456 (S.D.N.Y.1985); *United States v. Badalamenti,* 614 F.Supp. 194, 196 (S.D.N.Y.1985); *United States v. Rogers,* 602 F.Supp. 1332, 1339 (D.Colo.1985). This course is only appropriate, however, where a statute is fairly susceptible to more than one interpretation, in which event the interpretation most consistent with constitutionality should be adopted. *See United States v. Rumely,* 345 U.S. 41, 45, 73 S.Ct. 543, 545–46, 97 L.Ed. 770 (1953). We agree with *Harvey,*

814 F.2d at 917–18, that we are not presented with "fair alternatives" of construction here, and accordingly conclude that the "bona fide purchaser" exemption of 21 U.S.C. § 853(c) (Supp. III 1985) does not exempt legitimate, non-fraudulent attorney's fees from forfeiture.

### C. *Constitutional Claim*

■ It is clear that the sixth amendment right to counsel includes a right to privately retained counsel of choice. *See, e.g., United States v. Curcio,* 694 F.2d 14, 22–23 (2d Cir.1982). "An accused who is financially able to retain counsel must not be deprived of the opportunity to do so." *United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). It is equally clear, however, that the right to counsel of choice is qualified, and can be outweighed by countervailing governmental interests. *See, e.g., United States v. Paone,* 782 F.2d 386, 392 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 269, 93 L.Ed.2d 2⁴6 (1986); *In Re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 250–51 (2d Cir.1985) (in banc), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). The two courts that have directly addressed the issue of the constitutional right to counsel of choice in the context of the CFA have found that the government's interest in forfeiture is outweighed by the defendant's interest in using his property to retain counsel. *Harvey,* 814 F.2d at 924; *United States v. Nichols,* 654 F.Supp. 1541, 1558 (D.Utah 1987). We disagree with the reasoning and the results of those cases.

First, we think that both *Harvey* and *Nichols* undervalue the government's interest in restraining and obtaining forfeiture of assets that would otherwise be used to compensate private counsel of choice. The general governmental interest in forfeiture is to "strip [racketeering and drug trafficking] offenders and organizations of their economic power." Senate Report 191, 1984 U.S.Code Cong. & Admin.News 3374. The specific interest embodied in the post-indictment restraint and "relation-back" provi-

sions is to prevent defendants from "defeating forfeiture by removing, transferring, or concealing their assets prior to conviction." *Id.* at 195, 1984 U.S.Code Cong. & Admin.News 3378. The court in *Harvey* conceded the importance of these interests, but found them only to outweigh "any 'right' by an accused to transfer tainted property to his defense counsel, ostensibly as attorney fees but in reality as a sham to prevent forfeiture." *Harvey*, 814 F.2d at 924. The court in *Nichols* flatly concluded that "[e]xempting attorneys' fees from a preconviction restraining order ... does not undermine the statute's purpose of stripping drug dealers of their economic bases." *United States v. Nichols*, 654 F.Supp. at 1558. *See also United States v. Thier*, 801 F.2d 1463, 1474–75 (5th Cir.1986) (exempting from restraint sufficient assets to pay reasonable attorneys fees and necessary living expenses does not allow defendant to benefit economically from crime), *modified*, 809 F.2d 249 (1987).

This approach, we think, amounts to an impermissible substitution of judicial policy for Congressional policy. Because of the protracted and complicated nature of RICO and CCE prosecutions, very considerable amounts of money may be paid to defense counsel. If, as we have concluded, Congress did not see fit to exempt tainted assets from forfeiture for the payment of legal expenses, we are reluctant to conclude that such transfers do not significantly impede the statutory purpose. Furthermore, it seems anomalous to contend that privately retained counsel is essential to the effective defense of RICO and CCE prosecutions, as those who favor exemption of attorneys' fees from forfeiture invariably maintain,[5] while arguing that a defendant who is enabled to retain private counsel solely because he possesses tainted funds as a result of criminal activity does not benefit from his possession of those funds. *See In re Grand Jury Subpoena Duces Tecum dated January 2, 1985 (Payden)*, 605 F.Supp. 839, 849 n. 14 (S.D.N.Y.),

*rev'd on other grounds*, 767 F.2d 26 (2d Cir.1985). Clearly, he would thus attain a benefit not available to indigent defendants who do not have tainted funds at their disposal.

More importantly, we also conclude that *Harvey* and *Nichols* overvalue the legitimacy of a defendant's interest in using possibly tainted assets. Specifically, we are not convinced by the *Harvey* court's attempt to distinguish forfeiture and restraint of assets under the CFA from the situation in which a criminal defendant would simply be prevented from using derivative contraband, such as money seized immediately after a drug sale or a bank robbery, to retain counsel. *Harvey* distinguished such situations in these terms:

> In such cases, the government seized property manifestly that of someone other than the accused and for preservative purposes. Forfeiture under the Act [, on the other hand,] may obviously reach property to which no third party has a superior claim. The financial plight that might result from sequestration of contraband is simply of a piece with that resulting from other vagaries of life that make it impossible to hire private counsel.

*Harvey*, 814 F.2d at 926.

Even though property subject to forfeiture under the CFA may not be "that of someone other than the accused," the *Harvey* rationale overlooks the fact that "[a]ll right, title, and interest in [forfeitable] property described in subsection (a) of this section *vests in the United States upon the commission of the act giving rise to forfeiture under this section.*" 21 U.S.C. § 853(c) (Supp. III 1985) (emphasis added). *See United States v. Ginsburg*, 773 F.2d 798, 801 (7th Cir.1985) (while government's interest in profits or proceeds of racketeering activity does not *attach* until conviction, its interest *vests* at the time of the act that constitutes the racketeering violation),

---

5. *E.g.*, Brief of The Association of the Bar of The City of New York, Committee on Criminal Advocacy, as *Amicus Curiae* in support of Defendant–Appellant at 13–14. *See also United States v.*

*Rogers*, 602 F.Supp. 1332, 1349–50 (D.Colo.1985) (given the exigencies of RICO cases, court appointed counsel is inadequate substitute for privately retained counsel).

*cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986).

The real distinction, it seems to us, is the degree of likelihood that the property is subject to the superior claim of a third party (the bank or its depositor, in the case of a bank robbery; the government, in the case of forfeitable assets). *See Harvey,* 814 F.2d at 926 (sequestered contraband "manifestly" property of someone other than the accused). In the case of the bank robber arrested with loot in his hands or the drug dealer arrested with money from a sell in his hands, it is manifest that the property is probably contraband and thus forfeitable. The question is whether restraint and forfeiture under the CFA is more analogous to the situation in which obvious contraband is seized than to the situation in which property is seized even though there is no suggestion that it is related to any criminal activity. *See United States ex rel. Ferenc v. Brierley,* 320 F.Supp. 406 (E.D.Pa.1970) (right to retain private counsel violated by government's pre-trial failure to return money seized in excess of sum alleged to have been stolen). In the case before us, where the property is real estate rather than obvious contraband, the only source of certainty that the property is probably the proceeds of criminal activity is the indictment itself. *But see United States v. Long,* 654 F.2d 911, 915

(3d Cir.1981) (government cannot rely on indictment alone to establish likelihood that properties are subject to forfeiture).

As disinclined as we are to establish an absolute rule exempting property earmarked for attorney's fees from forfeiture, we are equally disinclined to postulate an absolute rule allowing the government to impose indigence and deprive RICO and CCE defendants of the opportunity to retain private counsel merely by obtaining an indictment. Such a rule would give the government "the ultimate tactical advantage of being able to exclude competent counsel as it chooses" simply by "appending a charge of forfeiture to an indictment under RICO" or CCE. *United States v. Rogers,* 602 F.Supp. 1332, 1350 (D.Colo. 1985).

In our search for a reasonable compromise between the statutorily posited interests of the government and the qualified right of a defendant to retain counsel of choice, we have found an alternative rule suggested by the line of circuit court cases requiring a post-restraining order adversarial hearing with respect to forfeiture-related restraining orders.[6] *See Harvey,* 814 F.2d at 928–29; *United States v. Thier,* 801 F.2d 1463, 1466–70 (5th Cir.1986), *modified,* 809 F.2d 249 (5th Cir.1987); *United States v. Crozier,* 777 F.2d 1376, 1382–84 (9th Cir.1985);[7] *United States v. Lewis,*

---

**6.** Monsanto's attorney *pro tem* argued for such a hearing below as a "possible solution," but Judge Ward denied the request and the issue was not pursued on appeal. We note that this situation meets the concern expressed in our colleague's dissent as to who would represent a defendant at such a hearing in *this* case, and suggest further that as a general rule, prospective counsel unwilling to represent a defendant at an extended trial because unable to be paid from forfeitable assets would nonetheless be willing to represent him at a relatively brief pretrial hearing to make those assets available to compensate the attorney for trial representation.

**7.** An earlier decision in *Crozier,* 674 F.2d 1293 (9th Cir.1982), was vacated and remanded by the Supreme Court, 468 U.S. 1206 (1984), for further consideration in light of, *inter alia, United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). In the latter case, the Supreme Court

approved, under the circumstances there presented and as against a claim that procedural due process had been violated, an eighteen month delay from the seizure of the $8,850 by an inspecting Customs Service officer to the initation by the United States of a civil action for the forfeiture of the money. Upon remand in *Crozier,* the Ninth Circuit distinguished criminal forfeiture under the CFA from civil forfeiture under the customs laws, and adhered to its prior ruling, 674 F.2d at 1297–98, that due process requires a pre-trial adversary hearing for the continuance of a restraining order based upon forfeiture counts in an indictment. 777 F.2d at 1382–84.

To avoid any doubt concerning our holding, we rule that a pre-trial adversary hearing is required where the question of attorney's fees is implicated, whether or not the law is ultimately settled that such a hearing is required with respect to any and all restraining orders based upon forfeiture counts in a criminal indictment. In other words, in view of the special sixth amendment considerations presented where a

759 F.2d 1316, 1324–25 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985); *United States v. Spilotro,* 680 F.2d 612, 616–19 (9th Cir.1982); *United States v. Long,* 654 F.2d 911, 915–16 (3d Cir.1981). *But see United States v. Musson,* 802 F.2d 384 (10th Cir.1986); *United States v. Draine,* 637 F.Supp. 482, 485–86 (S.D.Ala.1986); Senate Report 195–96. Where such a hearing is afforded, as we agree it must be, and the restraining order is thereafter continued, we conclude that there is no sixth amendment requirement that the restrained property be made available for attorney's fees.

Courts that have required post-restraining order hearings have done so in the context of procedural due process challenges to the freezing of a defendant's property prior to trial. *See, e.g., Harvey,* 814 F.2d at 928–29. *Harvey* concluded: "No reason appears why the government would be unduly burdened or any public interest disserved by providing the same sort of immediate post-deprivation hearing in the post-indictment setting as is required in the pre-indictment setting by [21 U.S.C.] § 853 or as is contemplated by Fed.R.Civ.P. 65." Some courts have held that such hearings are consistent with the restraining order provision, 21 U.S.C. § 853(e)(1)(A) (Supp. III 1985), because "[t]he requirements of Rule 65 apply to the issuance of all restraining orders and injunctions by the courts of the United States." *United States v. Thier,* 801 F.2d at 1468. Other courts have superimposed the requirement of an adversary hearing upon section 853(e)(1)(A) because "to the extent the Act authorizes the issuance of *ex parte* restraining orders after indictment without any post-deprivation hearing other than a criminal trial, it violates fifth amendment due process guarantees." *Harvey,* 814 F.2d at 929. Since section 853 of the statute very specifically requires notice and a hearing for pre-indictment restraining orders, 21 U.S.C. § 853(e)(1)(B) (Supp. III 1985), but omits that requirement for post-indictment orders, 21 U.S.C. § 853(e)(1)(A) (Supp. III 1985), we conclude with *Harvey* that notice and a hearing are constitutionally required (*i.e.,* as a matter of fifth amendment due process) [8] with respect to post-indictment restraining orders, but are not statutorily required.

Courts have also differed with regard to the government's burden at such hearings. Several pre–1984 amendment cases required the government to demonstrate, by evidence independent of the indictment, a probability of convincing a jury beyond a reasonable doubt both that the defendant has violated the statute and that the assets are subject to forfeiture, and we concur in that view. *See United States v. Lewis,* 759 F.2d at 1324; *United States v. Spilotro,* 680 F.2d at 618; *United States v. Long,* 654 F.2d at 915. On the other hand, *United States v. Thier,* relying on the legislative history of the 1984 CFA, concluded that the indictment itself constitutes a "strong showing" for continuing the freeze order, although "the grand jury's finding of probable cause that the defendant should be tried for the crime and its determination that certain assets are potentially forfeitable ... are not irrebuttable." 801 F.2d at 1470. *See* Senate Report 203 (at hearing to modify or vacate post-indictment restraining order, court is not to entertain challenges to validity of indictment). The courts seem to agree that the district court must at least consider the strength of the government's independent evidence and must determine that the government has a likelihood of succeeding at trial. Such a requirement, anomalous as it may seem in a criminal context, is not totally foreign. *Compare* 21 U.S.C. § 853(e)(1)(B)(i) (Supp. III 1985) (in ruling on an application for a *pre*-indictment restraining order, court must determine that there is substantial probability that United States will prevail

forfeiture impacts adversely upon the retention of counsel of choice, an ultimate overruling of the line of authority cited above, of which *Crozier* is representative, would not affect our holding herein unless that ruling specifically encompassed the situation where a restraining order is challenged as violative of the limited sixth amendment right to counsel of choice.

**8.** *But see* note 7, *supra.*

on the issue of forfeitability).[9]

Requiring an adversarial hearing, at which the government has the burden to demonstrate the likelihood that the assets are forfeitable, will provide a procedural check against the government's discretion to limit CCE and RICO defendants' choice of counsel simply by obtaining a forfeiture charge in the indictment. If the government cannot demonstrate the likelihood that a jury would find the assets to be the proceeds of crime, the interest of the defendant in using the property to retain counsel of choice should prevail. *Cf.* Brickey, *Forfeiture of Attorneys' Fees: The Impact of RICO and CCE Forfeitures on the Right to Counsel,* 72 Va.L.Rev. 493, 524–25 (1986) (where government's forfeiture allegations unfounded, case is similar to that where government refuses to return untainted assets).

■ In the event the district court finds that the government has not met its burden and lifts the restraining order, moreover, we think the district court should also order that any funds thereafter used to pay legitimate attorney's fees be exempt from any future post-trial forfeiture. We recognize that this may result in a situation in which the government does not meet its burden at the pre-trial hearing, but obtains a favorable verdict of forfeiture at trial the execution of which is hindered or totally precluded by the pre-trial ruling. Nevertheless, we are persuaded, as was the court in *Harvey,* 814 F.2d at 926, that not only the pre-trial "freeze" orders, but also the *threat* of post-conviction third party forfeiture, may effectively prevent a defendant from being able to retain counsel of choice. At the pre-trial stage, where the defendant is presumed innocent, we hold that if the government cannot make a sufficient showing to justify a restraining order, the defendant should not have to bear the risk that private counsel will still be deterred by the prospect of disgorging attorneys' fees after trial.[10] To the extent that some funds ultimately found to be forfeitable at trial will remain in the hands of attorneys, we view this as a necessary cost in this difficult balance between the interests of

9. Some courts, in requiring an adversary hearing in the forfeiture context, have suggested that the traditional standards for granting a preliminary injunction are incorporated into such hearings. *See United States v. Thier,* 801 F.2d at 1470; *United States v. Spilotro,* 680 F.2d at 618. This court requires that the applicant for a preliminary injunction establish:

(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.

*Baker's Aid v. Hussman Foodservice Co.,* 830 F.2d 13, 15 (2d Cir.1987), and cases there cited. Because we hold, *infra,* that once the government fails to obtain pre-trial restraint of assets needed for attorney's fees it also loses the right to seek post-trial forfeiture of property transferred to counsel for legitimate defense services, we conclude that the element of irreparable injury will always be present in such cases. The element of likelihood of success on the merits will be addressed, of course, by inquiry into the likelihood that the government will convince a jury that the defendant is guilty and the disputed assets are subject to forfeiture. Since we rule that due process requires a showing of "likelihood of success," we do not consider that the alternative of establishing "sufficiently serious questions going to the merits" should be available to the government. In view of the foregoing, we also will not require the kind of "harm balancing" that is involved when the applicant for an injunction can only establish "sufficiently serious questions going to the merits" rather than likelihood of success.

10. This should deal with the problem suggested in *United States v. Badalamenti,* 614 F.Supp. 194, 197 (S.D.N.Y.1985). The court there envisioned a situation in which a wealthy defendant could not qualify as indigent and obtain appointed counsel, but would be unable to retain private counsel because of the threat of post-trial forfeiture of attorney's fees. We are not faced with such a possibility here, since the district court has found that enforcement of the restraining order will render Monsanto indigent and thus qualified for appointed counsel. Similarly, and importantly, the prohibition of post-trial fee recapture under these circumstances should obviate the "conflict of interest" concern expressed in the cases and literature on this subject, *see, e.g., United States v. Ianniello,* 644 F.Supp. 452, 457 (S.D.N.Y.1985), with respect to an attorney's simultaneous and potentially conflicting concerns to represent his client diligently while avoiding post-trial forfeiture of his fees. We suggest that for this reason, the quotation from *United States v. Badalamenti,* 614 F.Supp. 194, 196–97 (S.D.N.Y.1985), in our colleague's dissent is inapposite to the rule stated herein.

the government and the defendant's sixth amendment right to counsel of choice.

On the other hand, if the government meets its burden at the hearing, we conclude that the defendant has no sixth amendment right to exemption of assets earmarked for attorney fees either from pre-trial restraint or from post-conviction forfeiture. Once the government has established a likelihood that the assets are indeed forfeitable, the case is more analogous to the situation in which a defendant is denied access to contraband that is manifestly subject to the interest of someone other than the accused. The right to retain private counsel of choice is not absolute; and, in the event that the defendant does not prevail at a post-restraint hearing, he is still guaranteed appointed counsel under the sixth amendment. We see no constitutional principle requiring that a defendant whose ability to pay private counsel results solely from the possession of property which he has acquired by criminal activity, which property Congress has declared to be forfeitable, must be placed in a position preferable to that of an indigent defendant who does not have such property at his disposal.

█ We also approve Judge Ward's suggestion that forfeitable assets may be invaded for the purpose of paying attorney's fees at CJA rates to any private attorney of the defendant's choice who would be willing to represent him for such compensation. As the government conceded at oral argument, the government would have to pay CJA rates anyway (to appointed counsel), and it makes little practical difference whether the payment comes from assets forfeitable to the government or from another governmental source. Furthermore, this rule would enable a criminal defendant to retain counsel of choice (assuming counsel's willingness to accept CJA rates), thus minimizing the incursion upon the defendant's limited constitutional right to counsel of choice.

We accordingly remand to the district court to conduct a hearing at which the government will have the burden of establishing the probability that Monsanto will be convicted at trial and the residential properties in question will be subject to forfeiture. The procedures generally followed at Fed.R.Civ.P. 65 hearings should apply. In view of 21 U.S.C. § 853(e)(3) (Supp. III 1985), however, the district court will not be bound by the Federal Rules of Evidence at the hearing. *See United States v. Rogers*, 602 F.Supp. 1332, 1345 (D.Colo.1985). Nor will the "balancing" tests traditionally utilized in Rule 65 hearings be applicable, *see* note 9 *supra;* only the government's likelihood of success in convicting the defendant and obtaining forfeiture of the disputed assets will be at issue. In the event the government meets its burden at the hearing and the restraining order is continued, no exemption from the provisions of the restraining order will be made to enable Monsanto to retain private counsel of choice, except to the extent of allowing the payment of attorney's fees at CJA rates from the restrained assets.

Inasmuch as the district court has adjourned the commencement of trial until January 4, 1988, we deny Monsanto's motion for stay of trial pending appeal as moot. We would assume, in any event, that the experienced and capable district judge before whom this litigation is pending would manage his calendar so as to meet any legitimate scheduling concerns resulting from this appeal.

### Conclusion

We reverse and remand to the district court for further proceedings not inconsistent with this opinion. The mandate shall issue forthwith.

OAKES, Circuit Judge, dissenting:

I agree that the case is ripe and appealable. I agree also that the district court cases holding that Congress did not intend the forfeiture provisions of RICO and CCE to apply to legitimate counsel fees, *e.g., United States v. Estevez*, 645 F.Supp. 869, 871–72 (E.D.Wis.1986), were erroneously decided. Reading the "bona fide" purchaser provision, 18 U.S.C. § 1963(*l* )(6)(B) (Supp. IV 1986), to cover attorneys who have reasonable cause to believe their fees might be payable out of property subject to

forfeiture improperly contorts the plain language of the statute. *See United States v. Harvey,* 814 F.2d 905, 913–16 (4th Cir.1987), *reh'g en banc granted sub nom. United States v. Caplin & Drysdale, Chartered* (June 11, 1987). After all, as Judge Leval noted, "[n]o one is more on notice of likelihood that the money may come from ... prohibited activity than the lawyer who is asked to represent the defendant in the trial of the indictment." *United States v. Badalamenti,* 614 F.Supp. 194, 196 (S.D.N.Y.1985).

However, the majority opinion's characterization of the right to counsel as merely "a defendant's interest in using possibly tainted assets" permits deference to congressional policy in the face of conflicting constitutional rights. The Sixth Amendment is implicated not only on the individual level of the particular defendant, but also on the institutional level of the criminal justice system as a whole.[1] *See* Cloud, *Forfeiting Defense Attorneys' Fees: Applying an Institutional Role Theory to Define Individual Constitutional Rights,* 1987 Wis.L.Rev. 1, 8–15; Note, *Against Forfeiture of Attorneys' Fees Under RICO: Protecting the Constitutional Rights of Criminal Defendants,* 61 N.Y.U. L.Rev. 124, 146–48 (1986). Therefore, I agree with the result in *Harvey,* 814 F.2d at 924–26,[2] and would not limit the analysis, as does the majority, to weighing the Government's interest in forfeiture against the defendant's interest in using his property to employ counsel of his choice. Rather, I would also consider the systemic interest of permitting defense counsel to perform their proper role in our adversary system of justice. As the Supreme Court said in *United States v. Cronic,* 466 U.S. 648, 655, 104 S.Ct. 2039, 2044–45, 80 L.Ed.2d 657 (1984) (quoting *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975)), "[t]he very premise of our adversary system of criminal justice is

that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *See also Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984); *Polk County v. Dodson,* 454 U.S. 312, 318–19, 102 S.Ct. 445, 449–50, 70 L.Ed.2d 509 (1981). The process itself is worthy of protection.

By failing to credit the institutional interests in a fair adversarial system, the majority opinion provides the Government with a negative, indeed an unwholesome, power over the defendant's choice of counsel in the very type of complex criminal case where astute, experienced counsel is most needed. RICO and CCE cases involve vague statutes and severe penalties. If a conspiracy charge was, in Learned Hand's words, the "darling of the modern prosecutor's nursery," *Harrison v. United States,* 7 F.2d 259, 263 (2d Cir.1925), what would he say of a RICO charge whose three or four conspiracies are charged as the "predicate" acts? *E.g., United States v. Ruggiero,* 726 F.2d 913, 918–19 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). Can we seriously contend that a proper balance would be effected in such cases by giving a defendant, made "indigent" by the Government's assertion of a potential forfeiture claim, a young attorney from an underfunded, overworked public defender's office for the ensuing 6–15 month trial? *See* Cloud, 1987 Wis.L.Rev. at 47–48 & n. 224. Or a lawyer appointed under the Criminal Justice Act, with its limitations on fees for attorneys, 18 U.S.C. § 3006A(d)(1) (1982 & Supp. IV 1986), and investigative or expert services? 18 U.S.C. § 3006A(e) (1982 & Supp. IV 1986). *See United States v. Reckmeyer,* 631 F.Supp. 1191, 1197 (E.D.Va.1986), *aff'd sub nom. Harvey,* 814 F.2d 905.

While Congress may wish to consider the pre-trial mini-trial that the majority opinion

---

**1.** Although this court wherever possible must construe statutes to avoid unconstitutional results, *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932), here neither the legislative history nor the plain language of the statute supports an exemption for attorneys' fees from forfeiture. Therefore, the Sixth and

Fifth Amendment concerns cannot be ignored. *See Harvey,* 814 F.2d at 917–18.

**2.** *Harvey,* of course, held that the Act could properly reach fraudulent or sham transfers to an attorney, 814 F.2d at 924, 929, and I agree with that also.

proposes in any attempt to revise the statute to meet the constitutional demands, the proposal is problematic. First, I am curious as to who will represent the defendant at this hearing. Second, in theory the Government's burden of showing likelihood of success on the merits of the criminal charges and on the issue of forfeitability of the assets is substantial. But, as a practical matter, absent rigorous cross-examination or the production of evidence to show that the defendant's property was earned or derived from legitimate sources, the Government will have little trouble meeting *that* burden. Thus, the mini-trial would do little to protect the interests of either the defendant or the adversarial system. Finally, we should be hesitant to create this new procedural step in light of the Supreme Court's firm rejection of the new universe of mini-trials in respect to class actions. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974).

The forfeiture statute, which permits the Government to recapture attorneys' fees paid before conviction, is unconstitutional at least on Sixth Amendment, and possibly on Fifth Amendment due process, grounds. *See United States v. Thier*, 801 F.2d 1463, 1475–77 (5th Cir.1986) (Rubin, J., concurring); Cloud, 1987 Wis.L.Rev. at 50 n. 237. *See also United States v. Bassett*, 632 F.Supp. 1308, 1316 (D.Md.1986) ("Although the 'relation back' aspect of the forfeiture statute is only triggered by conviction, the practical effect is that if forfeiture is applied to attorneys' fees the true impact is felt *prior* to conviction."), *aff'd sub nom. Harvey*, 814 F.2d 905. Judge Leval put it even better in *Badalamenti:*

> A lawyer who was so foolish, ignorant, beholden or idealistic as to take the business would find himself in inevitable positions of conflict. His obligation to be well informed on the subject of his client's case would conflict with his interest in not learning facts that would endanger his fee by telling him his fee was the proceeds of illegal activity. If he made efforts to fight the forfeiture claiming he was "reasonably without cause to believe that the property was subject to forfeiture," the evidence on this issue would consist primarily of privileged matter confided to him by his client. He might furthermore be found to have accepted a contingent fee in a criminal case in violation of DR 2–106(C), since his retention of his fee would depend on gaining an acquittal in the client's trial. The statute would give attorneys a motive to negotiate a guilty plea that did not involve forfeiture, rather than fight the case expending valuable time and increasing the risk of incurring forfeiture.

614 F.Supp. at 196–97.

Surely this statute not only intrudes upon the individual's right to secure counsel of his choice. It shakes the very foundations of our criminal justice system.

Accordingly I dissent.